556 S.E.2d 397

**Gerald COX, Vickie Cox, William Sulzer, Virginia Marie Sulzer, Thomas Mitchum, Sr. and Corine H. Mitchum, on behalf of themselves and all others similarly situated, Respondents,**

v.

**WOODMEN OF THE WORLD INSURANCE COMPANY, Jerry D. Rogers and James K. Dowey, Appellants.**

No. 3382.

Court of Appeals of South Carolina.

Heard Dec. 14, 2000.
Decided Sept. 4, 2001.
Rehearing Denied Dec. 20, 2001.

Evans Taylor Barnette, of McCutchen, Blanton, Rhodes & Johnson, of Columbia; and Charles R. Norris, of Nelson, Mullins, Riley & Scarborough, of Charleston, for appellants.

T.S. Stern, Jr., and Karen W. Creech, both of Covington, Patrick, Hagins, Stern & Lewis, of Greenville; and Paul J. Doolittle, Timothy E. Eble and Michael J. Brickman, all of Ness, Motley, Loadholt, Richardson & Poole, of Charleston, for respondents.

HUFF, Judge:

Woodmen of the World Insurance Company, Jerry D. Rogers and James K. Dowey appeal the trial court's denial of their motion to compel arbitration. Woodmen also appeals the trial court's denial of its motion to dismiss pursuant to Rule 12(b)(8), SCRCP. We reverse the denial of the motion to compel arbitration and affirm the denial of the motion to dismiss.

## FACTS

Woodmen is a fraternal benefits society organized and existing under the laws of the State of Nebraska with its principal place of business in Omaha, Nebraska. Rogers is the State Manager for Woodmen in South Carolina. Dowey is an Area Manager for Woodmen. Gerald Cox, Vickie Cox, William Sulzer, Virginia Marie Suzler, Thomas O. Mitchum, Corine H. Mitchum (Respondents) are members of Woodmen who purchased Woodmen universal life insurance policies, surrendering life insurance policies with Woodmen.

On July 17, 1997, the Respondents, on behalf of themselves and all others similarly situated, brought this action against Woodmen, Rogers, and Dowey for violation of the Insurance Trade Practices Act, S.C.Code Ann. § 38–57–10, *et seq.* (1989 and Supp.2000), fraud, breach of contract accompanied by fraudulent acts, violation of the South Carolina Unfair Trade Practices Act, S.C.Code Ann. § 39–5–10 *et seq.* (1985 and Supp.2000), constructive fraud, negligent misrepresentation,

conversion, and breach of fiduciary duties, and as to Woodmen alone, negligent supervision. They alleged Woodmen, Rogers, and Dowey induced them to replace their life insurance policies with universal life insurance policies.

Woodmen removed the case to the United States District Court for the District of South Carolina. It filed with the federal court a motion to dismiss or in the alternative for a stay of proceedings. In the motion it asserted that an Alabama class action, purported to be a national class action, had been conditionally certified and involved the same or substantially the same issues that are alleged in the South Carolina action. It also filed a motion to stay proceedings pending disposition to alternative dispute resolution and/or a petition to compel alternative dispute resolution. On September 23, 1997, the district court remanded the case to the Court of Common Pleas for Kershaw County without acting on the motions.

Woodmen subsequently filed a motion to dismiss or abate the action on the ground that another action was pending between the same parties for the same claims. The trial court denied the motion on February 6, 1998. It subsequently denied Woodmen's motion for reconsideration.

In an amended order filed April 14, 1999, the trial court denied Woodmen's motion to compel arbitration pursuant to the Federal Arbitration Act, (FAA), 9 U.S.C.A. § 1, *et seq.* (1999).[1] It found S.C.Code Ann. § 15–48–10(b)(4) (Supp.2000), which exempts "any insured or beneficiary under any insurance policy or annuity contract" from the South Carolina Arbitration Act, S.C.Code Ann. § 15–48–10 *et seq.* (Supp 2000) "reverse pre-empts" the FAA through the McCarran–Ferguson Act, 15 U.S.C.A. § 1011 *et seq.* (1997). In addition, it held section 15–48–10(b)(4) is not within the "general insurance laws of this state," and thus it applies to fraternal benefit associations such as Woodmen. This appeal followed.

## DISCUSSION

1. McCarran–Ferguson "reverse pre-emption"

Woodmen, Rogers, and Dowey argue the trial court erred in concluding the FAA does not apply to the arbitration provision

---

1. Rogers and Dowey joined the motion.

in the Woodmen constitution by virtue of the McCarran–Ferguson Act. We disagree.

On December 10, 1996, Woodmen adopted an amendment to its constitution to provide for "Problem Resolution Procedures" that include binding arbitration. The amendment is binding on Respondents as if it had been in force at the time of their applications for membership.[2]

■ In most instances, our state policy, like federal policy favors arbitrating disputes. *Heffner v. Destiny, Inc.*, 321 S.C. 536, 537, 471 S.E.2d 135, 136 (1995) ("The policy of the United States and this State is to favor arbitration of disputes."). As an exception to this policy, § 15–48–10(b)(4) provides the South Carolina Arbitration Act, which favors arbitration, does not apply to "any insured or beneficiary under any insurance policy or annuity contract."

■ Generally, if the contract providing for arbitration involves interstate commerce, the FAA displaces the state arbitration statute.[3] *Soil Remediation Co. v. Nu–Way Envtl.*, 323 S.C. 454, 459–60, 476 S.E.2d 149, 152 (1996) ("If the arbitration agreement in the instant controversy is covered by the FAA, then ... the FAA preempts S.C.Code Ann. § 15–48–10(a).... For the Federal Act to apply, the commerce involved in the contract must be interstate or foreign."). The McCarran–Ferguson Act, however, provides an exception to general federal pre-emption. The Act states in part: "No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance...." 15 U.S.C.A. § 1012(b) (1997). It is undisputed the FAA does not specifi-

---

**2.** S.C.Code Ann. § 38–37–790 (1989) provides in part:

[A]ny changes, additions, or amendments to the charter or articles of the association or the constitution and bylaws duly made or enacted after the issuance of the benefit certificate bind the member and his beneficiaries and govern and control the contract in all respects the same as though the changes, additions, or amendments had been made prior thereto and were in force at the time of the application for membership.

**3.** The contracts at issue in this case, as insurance agreements between a fraternal benefits society incorporated in Nebraska and South Carolina residents, involve interstate transaction in commerce.

cally relate to insurance. Therefore, we must determine whether section 15–48–10(b)(4) was enacted for the purpose of regulating the business of insurance.

The United States Supreme Court has identified three factors in determining whether a particular practice is part of the business of insurance: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). The Court stated none of these factors is necessarily determinative of the issue. *Id.*

The trial court relied on *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co. Inc.,* 969 F.2d 931 (10th Cir.1992), in which the Tenth Circuit Court of Appeals considered the issue of whether the Kansas arbitration statute was a law enacted for the purpose of regulating the "business of insurance" as the term is used in the McCarran–Ferguson Act. The version of the Kansas arbitration statute, Kan. Stat. Ann. § 5–401,[4] in effect at the pertinent time provided:

> Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a contract of insurance ..., to submit to arbitration any controversy, other than a claim in tort arising between the parties is valid, enforceable and irrevocable.

---

4. The current version of Kan. Stat. Ann. § 5–401 (Supp.2000) provides:
   (a) A written agreement to submit any existing controversy to arbitration is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.
   (b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.
   (c) The provisions of subsection (b) shall not apply to: (1) Contracts of insurance, except for those contracts between insurance companies, including reinsurance contracts; (2) contracts between an employer and employees, or their respective representatives; or (3) any provision of a contract providing for arbitration of a claim in tort.

The Tenth Circuit recognized that statutes aimed at protecting or regulating the relationship between the insurance company and the policyholder "directly or indirectly, are laws regulating the 'business of insurance'" *Mutual Reinsurance Bureau,* 969 F.2d at 933 (quoting *SEC v. Nat'l Sec., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)). It held Kan. Stat. Ann. § 5–401 directly regulated the relationship between the insurance company and the policy holder by declaring an agreement to arbitrate unenforceable. *Id.* It explained, "To expressly invalidate an agreement contained in the insurance contract touches the core of the 'business of insurance....'" *Id.* at 933. The court noted that a contract of insurance is evidence of an agreement to spread risk and found the Kansas legislature had placed limits on the enforceability of an agreement to spread risk by enacting Kan. Stat. Ann. § 5–401. *Id.* In addition, the court found that the application of the McCarran–Ferguson Act did not require a state statute that "regulates the business of insurance" be in the form of an insurance code or an act relating only to insurance. *Id.* It held, "The application of the Kansas statute here concerned to insurance as an exception is clear and direct although included in an act relating basically to arbitration." *Mutual Reinsurance Bureau,* 969 F.2d at 934. Accordingly, it ruled that the Kansas statute combined with the McCarran–Ferguson Act prevented the application of the FAA. *Id.* at 935; *see Friday v. Trinity Universal,* 262 Kan. 347, 939 P.2d 869 (1997) (while noting *Mutual Reinsurance Bureau* had been legislatively overruled due to amendment to Kan. Stat. Ann. § 5–401 providing reinsurance contracts are not to be considered contracts of insurance, applying the Tenth Circuit's reasoning to hold the McCarran–Ferguson Act precluded application of the FAA and arbitration clause was unenforceable because of Kan. Stat. Ann. § 5–401).

Woodmen, Rogers and Dowey urge this court to follow the reasoning employed by the Second Circuit Court of Appeals in *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.,* 408 F.2d 606 (2d Cir.1969). In *Hamilton,* the Second Circuit held, "It is quite plain that arbitration statutes, including those of Texas and New York, are not statutes regulating the business of insurance, but statutes regulating the method of handling contract disputes generally." *Id.* at 611. It concluded that

neither the Texas Arbitration Act nor the New York Arbitration Act was a law regulating the business of insurance within the meaning of the McCarran–Ferguson Act. *Id.* However, as the Tenth Circuit noted, the statutes in *Hamilton* differed from K.S.A. § 5–401 in a very important aspect in that those statutes governed arbitration in general and did not mention "contracts of insurance." *Mutual Reinsurance Bureau,* 969 F.2d at 934.

More recently, the United States District Court for the Middle District of Alabama and the Supreme Court of Alabama have found the Alabama anti-arbitration statute [5] does not reverse pre-empt the FAA by way of the McCarran–Ferguson Act. *Woodmen of the World Life Ins. Soc'y. v. White,* 35 F.Supp.2d 1349 (M.D.Ala.1999); *Clayton v. Woodmen of the World Life Ins. Soc'y.,* 981 F.Supp. 1447 (M.D.Ala. 1997); *American Bankers Ins. Co. v. Crawford,* 757 So.2d 1125 (Ala.1999). The district court in Clayton noted the anti-arbitration statute is not confined to insurance contracts, but was included with the section of the Alabama code that applies to all contracts. *Clayton,* 981 F.Supp. at 1450 n. 1. In *Crawford,* the appellant argued the anti-arbitration statute was incorporated into the law of insurance by Ala.Code § 27–14–22 (1986), which provides: "All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof." 757 So.2d at 1135. The Alabama Supreme Court explained Ala.Code § 27–14–22 was simply a mandatory choice-of-law provision and found the appellant's incorporation argument too attenuated to require the conclusion that the policy of the McCarran–Ferguson Act should take precedence over the federal policy in favor of arbitration. *Id.* at 1136.

Considering the similarity between the Kansas arbitration statute, Kan. Stat. Ann. § 5–401 and S.C.Code Ann. § 15–48–10(b)(4), we find the reasoning of the Tenth Circuit in *Mutual Reinsurance Bureau* to be persuasive. Section 15–48–10(b)(4) is not a statute of general applicability like the Texas, New York, and Alabama statutes. Like the Kansas

---

5. Ala.Code § 8–1–41 (1993) provides in part: "The following obligations cannot be specifically enforced: ... (3) An agreement to submit a controversy to arbitration...."

statute, § 15–48–10(b)(4) specifically exempts "any insured or beneficiary under any insurance policy or annuity contract" from the South Carolina Arbitration Act. We find § 15–48–10(b)(4) was enacted for the purpose of regulating the business of insurance. The arbitration exception is an integral part of the policy relationship between the insurer and the insured because it expressly invalidates a provision contained in an insurance policy and sets forth the method for resolving disputes between the insured and the insurer. Through the exception, the legislature placed limits on the enforceability of an agreement to spread risk. Furthermore, § 15–48–10(b)(4) is a specific exemption limited to entities within the insurance industry. Accordingly, we conclude § 15–48–10(b)(4) "reverse pre-empts" the FAA through application of the McCarran–Ferguson Act.

2. Application of § 38–37–70

Woodmen, Rogers, and Dowey argue the trial court erred in holding S.C.Code Ann. § 38–37–70 (1989) does not exempt Woodmen from § 15–48–10(b)(4). We agree.

Section 38–37–70 provides: "Fraternal benefits associations are governed by this chapter. The general insurance laws of this State do not apply to fraternal benefits associations unless provision is made in the law for them." Therefore, we must determine whether § 15–48–10(b)(4) is within the legislature's definition of "general insurance laws of this State."

The primary concern in interpreting a statute is to determine the intent of the legislature if it reasonably can be discovered in the language when construed in the light of its intended purpose. *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997). In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin*, 308 S.C. 226, 417 S.E.2d 592 (1992).

The trial court relied on the Supreme Court's decision in *Raggio v. Woodmen of the World Life Ins. Soc'y.*, 228 S.C. 340, 90 S.E.2d 212 (1955). However, *Raggio* does not stand for the proposition that the term "the general insurance laws" refers only to the codification of laws contained in the prede-

cessor to Title 38. In *Raggio,* the supreme court considered whether a statute that contained a limitation of two years for insurers to contest the truth of applications for insurance applied to fraternal benefits associations. The court discussed the history of the statute. It noted the legislature expressly made the statute applicable to fraternal benefits associations and found no change of the legislative intent. The court thus concluded fraternal benefits associations were bound by the statute. *Raggio,* 228 S.C. at 353–55, 90 S.E.2d at 219.

■ Although not found in Title 38, § 15–48–10(b)(4) is a law enacted for the purpose of regulating the business of insurance, and is accordingly, an insurance law. The legislature did not expressly provide the statute applies to fraternal benefits associations. Thus, rather than being an insurance law that expressly applies to fraternal benefits associations, it is a "general insurance law of this state" within the legislature's meaning of § 38–37–70. Accordingly, the arbitration exception is not applicable to fraternal benefits associations such as Woodmen. Thus, as the Woodmen contracts provide for arbitration, the current dispute is subject to arbitration pursuant to the FAA.

3. Motion to dismiss pursuant to Rule 12(b)(8), SCRCP

■ Woodmen argues the trial court erred in denying its motion to dismiss pursuant to Rule 12(b)(8), SCRCP, asserting there is a pending action in Alabama involving the same parties and the same or substantially the same issues. The Respondents assert the order denying the motion to dismiss is not appealable. However, an order that is not directly appealable will be considered if there is an appealable issue before the court. *Pruitt v. Bowers,* 330 S.C. 483, 499 S.E.2d 250 (Ct.App.1998); *see Briggs v. Richardson,* 273 S.C. 376, 256 S.E.2d 544 (1979). Accordingly, we may consider the issue.

■ On January 14, 1998, counsel for the Respondents informed the court that the judge had decertified the Alabama action and no South Carolina class members were included within the previously conditionally certified class action. Accordingly, we find that under the facts presented to the trial court at the time of its decision, it did not err in denying

Woodmen's motion to dismiss pursuant to Rule 12(b)(8), SCRCP.

For the forgoing reasons, the trial court's denial of the motion to compel arbitration is **REVERSED** and the matter **REMANDED** for an order consistent with this opinion.[6] The trial court's denial of the motion to dismiss is **AFFIRMED.**

GOOLSBY and SHULER, JJ., concur.

---

6. The Respondents raise numerous issues not addressed by the trial court as alternate grounds for affirmance. We decline to address these issues. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (stating the appellate court may not wish to discuss additional sustaining grounds when it reverses the lower court's decision).