594 S.E.2d 541

QZO, INC., d/b/a Palmetto Ambulance Service, Respondent,

v.

Darrin MOYER, Jerry Benenhaley, Alice Childers,
of whom Darrin Moyer is Appellant.

No. 3759.

Court of Appeals of South Carolina.

Heard Feb. 11, 2004.
Decided March 15, 2004.
Rehearing Denied April 22, 2004.

250

Kevin S. Little, of Atlanta, GA; and William E. Hopkins, Jr., of Columbia, for appellant.

Blaney A. Coskrey, III, John E. Schmidt, III, Travis Dayhuff, and Daniel J. Westbrook, all of Columbia, for respondent.

ANDERSON, J.:

Darrin Moyer ("Appellant") appeals several rulings from the Circuit Court in favor of QZO, Inc., d/b/a Palmetto Ambulance Service ("Palmetto"), including the denial of Appellant's motion to dismiss based on lack of personal jurisdiction, the granting of a temporary restraining order ("TRO"), the imposition of sanctions for violating the TRO, and the court's decision to strike Appellant's answer and declare him in default. We affirm.

### FACTS/PROCEDURAL BACKGROUND

This case arises out of a dispute between former business partners. Appellant, a citizen and resident of Richmond County, Georgia, is a fifty percent owner/shareholder in Palmetto, a corporation organized under the laws of the state of Georgia. Palmetto provides ambulance services and maintains offices in Augusta, Georgia, and Columbia, South Carolina.

Keith Stille, the president of Palmetto and the other fifty percent shareholder, commenced this action by verified com-

plaint dated February 28, 2002. The complaint alleged Stille had reason to believe Appellant intended to open a competing ambulance service in violation of the South Carolina Trade Secrets Act.[1] The complaint stated that Palmetto had reason to believe a computer belonging to the company, but in Appellant's possession, contained evidence of Appellant's wrongful acts.

The complaint requested a TRO enjoining Appellant from using any proprietary information and ordering Appellant to surrender the computer either to Palmetto or a neutral third party.

Having determined that the information in Palmetto's computer was in danger of being altered or destroyed before a hearing on the matter could be accomplished, and that irreparable harm would result if the TRO were not issued, the Circuit Court granted the TRO on the same day the original complaint was filed. The TRO ordered Appellant to immediately surrender Palmetto's computer upon receipt of the order.

Although the TRO was issued on February 28, 2002, and served on the Appellant that same day, Appellant did not turn over the computer until seven days later. Upon receipt, counsel for Palmetto hired a computer expert to inspect and retrieve any pertinent information that might be located on the computer's hard drive. However, the expert's examination revealed that the hard drive was reformatted a day before the computer had been turned over to Palmetto, effectively erasing any information the computer may have contained.

On March 8, 2002, and again on March 22, 2002, Palmetto filed amended complaints adding additional grounds of liability as well as two more defendants. In a motion dated April 24, 2002, Appellant moved to dismiss the case pursuant to Rule 12(b), SCRCP. Specifically, Appellant averred the case should be dismissed based on Rule 12(b)(1)—lack of subject matter jurisdiction; 12(b)(2)—lack of personal jurisdiction; and 12(b)(8)—that another action was pending between the parties concerning the same subject matter as the current suit.

---

1. *See* S.C.Code Ann. §§ 39–8–10 to –130 (Supp.2003).

Before Appellant's motion to dismiss was heard, Palmetto moved pursuant to Rule 37, SCRCP, for sanctions to be imposed on Appellant for what Palmetto alleged was a willful violation of the TRO issued by the court on February 28, 2002. On July 9, 2002, a hearing was held concerning both motions. In an order dated July 30, 2002, the trial court denied Appellant's motion to dismiss and granted Palmetto's motion for sanctions.

Specifically, the court found Appellant willfully destroyed evidence relevant to Palmetto's case. Thereafter, while recognizing the severity of the sanction, the trial court struck Appellant's pleadings and entered a judgment of liability in favor of Palmetto.

Appellant filed a motion to reconsider and a hearing was held on September 30, 2002. In an order dated October 8, 2002, the trial court reaffirmed its earlier rulings and denied Appellant's motion to alter or amend the judgment.

## ISSUES

I.  Did the trial court err in denying Appellant's motion to dismiss based on lack of personal jurisdiction?

II.  Did the trial court err in issuing a TRO that provided no opportunity for Appellant to be heard?

III.  Did the trial court err in sanctioning Appellant for an alleged violation of the TRO?

IV.  Did the trial court err in striking Appellant's answer and entering a default judgment of liability in favor of Palmetto?

## LAW/ANALYSIS

### I. Denial of Motion to Dismiss

Appellant argues the trial court erred in failing to grant its motion to dismiss based on lack of personal jurisdiction. We disagree.

█  Although a pre-trial motion to dismiss based on lack of personal jurisdiction is not usually immediately appealable, it can be considered when other appealable issues are presented to an appellate court. *See Mid–State Distribs., Inc. v. Centu-*

*ry Imps., Inc.,* 310 S.C. 330, 426 S.E.2d 777 (1993); *Cox v. Woodmen of the World Ins. Co.,* 347 S.C. 460, 556 S.E.2d 397 (Ct.App.2001).

■ A two-step process is utilized to determine whether or not a South Carolina court may exercise personal jurisdiction over a non-resident defendant. *Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 423 S.E.2d 128 (1992). The trial court must first consider whether South Carolina's long-arm statute applies.[2] Should the court find the statute does apply, it must then determine whether the defendant's contacts with South Carolina are such that an exercise of personal jurisdiction would comport with due process. *Id.*

■ As the trial court correctly pointed out in its order denying Appellant's motion to dismiss, Appellant's conduct clearly falls within the purview of the long-arm statute. First, when Appellant was an officer and director working for Palmetto, his office was located in Columbia, South Carolina. After leaving Palmetto, Appellant began operating a competing ambulance service under the name of Regional Ambulance Service, Inc., with its principal place of business in West Columbia, South Carolina. Because Appellant was transacting business in this state, the long-arm statute is satisfied. *See* S.C.Code Ann. § 36–2–803(1)(a) (2003) (stating a court may exercise jurisdiction over a person transacting business in South Carolina).

Moreover, the long-arm statute is satisfied because Palmetto averred in its complaint that the alleged wrongful conduct occurred within South Carolina. *See* S.C.Code Ann. § 36–2–803(1)(c) (2003) (jurisdiction exists over a person committing a tortious act in whole or in part in South Carolina).

Significantly, the nature of Appellant's current business in South Carolina would subject him to general jurisdiction as well under S.C.Code Ann. § 36–2–802 (2003). Section 802 reads as follows: "A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, *doing business,* or *maintaining his or its principal place of business*

---

2. S.C.Code Ann. § '36–2–803 (2003).

*in,* this State as to *any cause of action." Id.* (emphasis added).

■ Furthermore, Appellant's contacts with South Carolina are such that the exercise of jurisdiction would comport with due process. In order for states to exercise jurisdiction over a non-resident defendant, due process requires that the defendant have minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980).

■ The due process analysis involves a two-step inquiry. First, it must be determined if the party has minimum contacts with the forum state. One way to determine whether a party has minimum contacts with a state is to determine whether he or she "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Clearly, Appellant's contacts were such in South Carolina that he should reasonably anticipate "being haled into court [here]." He currently owns and operates a business in South Carolina, worked for Palmetto in South Carolina, and allegedly committed the complained of acts in South Carolina. Thus, Appellant has the requisite minimum contacts with the state to satisfy due process.

■ Similarly, the traditional notions of fair play and substantial justice would not be offended by exercise of jurisdiction over Appellant. To determine whether an exercise of jurisdiction would comport with this standard, a number of factors must be considered, including: (1) the duration of Appellant's activity in this state; (2) the nature and circumstances of Appellant's acts; (3) inconvenience to the parties by either the exercise or refusal to exercise jurisdiction; and (4) South Carolina's interest in exercising jurisdiction over the action. *Clark v. Key,* 304 S.C. 497, 405 S.E.2d 599 (1991). This standard is met as well. Appellant maintained activity in South Carolina the entire time he worked for Palmetto, and currently runs another business in this state. All the acts of which Palmetto complains occurred in South Carolina. The exercise of jurisdiction would not inconvenience the parties

because Appellant currently runs a business located in this state. Finally, South Carolina has an interest in exercising personal jurisdiction over this action because the acts complained of occurred here.

Because we find Appellant's conduct falls within the purview of the long-arm statute and comports with due process, we hold that the trial court did not err in its refusal to grant Appellant's motion to dismiss.

■ Appellant avers that South Carolina's "door closing statute" [3] prevents a non-resident corporation from bringing an action against a non-resident citizen within South Carolina. Indubitably, the "door closing statute" does *NOT* involve subject matter jurisdiction. *See Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003). Because Appellant did not raise this argument below, it is not preserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal.").

## II. TRO

■ Appellant makes a number of arguments concerning the TRO the court issued on Palmetto's behalf. However, these issues were not raised in the court below and they are not preserved for our review. *See Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003).

## III. Sanctions and Default Judgment

Because issues three and four are related, we find it prudent to address them simultaneously. Appellant contends the trial court erred by granting sanctions, ordering Appellant's answer to be struck, and entering a default judgment. We disagree.

■ The decision of whether or not to award sanctions is generally entrusted to the discretion of the trial court. *See Fields v. Regional Med. Ctr. Orangeburg*, 354 S.C. 445, 581 S.E.2d 489 (Ct.App.2003) (decision of what kind and whether to impose discovery sanctions is left to sound discretion of

---

3. *See* S.C.Code Ann. § 15–5–150 (1977).

Circuit Court); *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 489 S.E.2d 679 (Ct.App.1997) (noting that imposition of sanctions is generally entrusted to sound discretion of Circuit Court); *see also Stone v. Reddix–Smalls*, 295 S.C. 514, 369 S.E.2d 840 (1988) (stating that contempt decision should be reversed only when without evidentiary support or upon an abuse of discretion by the trial court). An appellate court will not disturb this decision unless the trial court abused its discretion. *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 511 S.E.2d 716 (Ct.App.1999); *see also Karppi*, 327 S.C. at 542, 489 S.E.2d at 681 (stating that trial court's exercise of its discretionary powers with respect to sanctions imposed in discovery matters will be interfered with by the Court of Appeals only if abuse of discretion has occurred).

The burden is on the appealing party to show the trial court abused its discretion in imposing sanctions for failing to comply with a discovery order. *Halverson v. Yawn*, 328 S.C. 618, 493 S.E.2d 883 (Ct.App.1997); *Karppi*, 327 S.C. at 542, 489 S.E.2d at 681. An abuse of discretion may be found where the appellant shows that the conclusion reached by the trial court was without reasonable factual support and resulted in prejudice to the rights of appellant, thereby amounting to an error of law. *Kershaw County Bd. of Educ. v. United States Gypsum Co.*, 302 S.C. 390, 396 S.E.2d 369 (1990); *Karppi*, 327 S.C. at 542, 489 S.E.2d at 681.

When a party fails to obey an order relating to discovery, the trial court may strike that party's pleadings and enter a default judgment. *Griffin*, 334 S.C. at 198, 511 S.E.2d at 718 (citing Rule 37(b)(2)(c), SCRCP); *see also Karppi*, 327 S.C. at 542, 489 S.E.2d at 682 (explaining that Rule 37, SCRCP, expressly grants trial court power to order judgment by default for either the violation of a court order or, upon motion, for party's failure to respond to certain discovery requests). When a court orders a sanction that results in default or dismissal, "the end result is harsh medicine that should not be administered lightly." *Griffin*, 334 S.C. at 198, 511 S.E.2d at 718; *see also Karppi*, 327 S.C. at 547, 489 S.E.2d at 684 (Anderson, J., concurring) ("A sanction which results in a default or dismissal is harsh punishment which should be

imposed only if there is some showing of willful disobedience or gross indifference to the rights of the adverse party."). The sanction should be aimed at the specific misconduct of the party sanctioned and should not be used improvidently to prevent a decision on the merits. *Griffin*, 334 S.C. at 198, 511 S.E.2d at 719; *Karppi*, 327 S.C. at 543, 489 S.E.2d at 682. The sanction imposed should be reasonable, and the court should not go beyond the necessities of the situation to foreclose a decision on the merits of a case. *Karppi*, 327 S.C. at 543, 489 S.E.2d at 682. Finally, when a sanction "would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience or gross indifference to its rights to justify the sanction." *Griffin*, 334 S.C. at 198–99, 511 S.E.2d at 719; *see also Karppi*, 327 S.C. at 543, 489 S.E.2d at 682 ("Before invoking this severe remedy, the trial court must determine that there is some element of bad faith, willfulness, or gross indifference to the rights of other litigants.").

 ■ Appellant essentially argues there is no evidence to suggest he intentionally violated the TRO. We disagree. The record contains evidence to support the trial court's findings. The trial court heard Appellant's testimony and found it lacked credibility. In fact, the trial judge commented at the hearing that Appellant's reasons for not complying with the TRO were "a great mysterious sequence of coincidences that strain credulity." When, as here, there is conflicting evidence on an issue, it is up to the court as trier of facts to judge credibility. *See Halbersberg v. Berry*, 302 S.C. 97, 394 S.E.2d 7 (Ct.App.1990).

Additionally, it is undisputed that Appellant did not turn the computer over to Palmetto until seven days after issuance of the TRO. When the computer was eventually turned over, it became clear that the hard-drive had been formatted the day before, effectively erasing any information contained therein. We conclude there was evidence to support the trial court's finding that Appellant willfully violated the TRO.

 ■ Appellant asserts the trial court did not consider the severity of the sanction when he ordered Appellant's pleadings struck. We disagree. The trial court specifically mentioned in its order that "[a]lthough it is a severe sanction, the Court

strikes [Appellant's pleadings] . . . in response to [Appellant's] intentional defiance of this Court's order of February 28, 2002 and his willful destruction of evidence."

Appellant cites *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 489 S.E.2d 679 (Ct.App.1997), in support of his argument. However, *Karppi* is factually distinguishable from the present case. In *Karppi*, this Court held that the trial court's sanction of striking the answer of a defendant was unduly harsh under the circumstances, especially because of the profound effect it had on the co-defendant to the litigation. Here, the only party punished is the Appellant, the party who clearly and willfully committed the misconduct.

The sanction imposed in the case of *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 511 S.E.2d 716 (Ct.App.1999), is similar to the sanction in the case *sub judice*. After Griffin Grading filed suit against Tire Service, the circuit judge struck Tire Service's answer as a discovery sanction. On appeal, the Court of Appeals determined that the striking of Tire Service's answer as a discovery sanction was warranted based on Tire Service's failure to comply meaningfully with four prior orders compelling discovery, even after the imposition of the assessment of attorney fees and after Tire Service was warned of the consequences of its failure to comply with the court's order.

The trial court in the instant case complied with the standards articulated in *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 489 S.E.2d 679 (Ct.App.1997), and *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 511 S.E.2d 716 (Ct.App.1999). Concomitantly, the trial court did not abuse its discretion in awarding sanctions or ordering Appellant's answer stricken.

## CONCLUSION

Accordingly, based on the foregoing, the trial court's rulings are

**AFFIRMED.**

HEARN, C.J., and BEATTY, J., concur.