731 S.E.2d 324

**Mary K. WALDEN, Appellant,**

v.

**HARRELSON NISSAN, INC., Respondent.**

Appellate Case No.2011–182767.

No. 5000.

Court of Appeals of South Carolina.

Heard March 13, 2012.

Decided July 11, 2012.

---

Mario A. Pacella, of Strom Law Firm, LLC, of Columbia, for Appellant.

W. Keith Martens, of Hamilton, Martens, & Ballou, LLC, of Rock Hill, for Respondent.

WILLIAMS, J.

On appeal, Mary K. Walden (Mary) argues the circuit court erred in compelling arbitration of a dispute involving an alleged breach of contract resulting from Harrelson Nissan, Inc.'s (Harrelson) failure to obtain credit life insurance in connection with the lease of an automobile from Harrelson. We affirm.

## FACTS/PROCEDURAL HISTORY

On March 3, 2007, Mary and her late husband, James Walden (James), executed a motor vehicle lease agreement (Lease) with Harrelson for a 2007 Nissan Murano. The Lease contained an arbitration agreement, which states in pertinent part:

[A]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arise out of or relate to your credit application, this lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

The Lease provided an option for Mary to purchase credit life insurance coverage with Life Investors Insurance Company (Life Investors) upon both lessees initialing the coverage on page two of the Lease. Both Mary and James initialed the relevant coverage portion of the Lease. The entire premium for the optional credit life insurance coverage amounted to $602.27 and was financed into the Lease. Mary began making regular monthly payments in the amount of $594.94 to Harrelson, which included a pro rata amount for the credit life insurance.

On January 24, 2009, James passed away. When Mary sought the proceeds of her credit life insurance policy, Life Investors denied her claim. Mary subsequently learned Harrelson allegedly failed to pay the premiums for her credit life insurance coverage to Life Investors. On February 25, 2009, Mary filed suit against Harrelson, asserting breach of fiduciary duty, breach of contract, breach of contract accompanied by a fraudulent act, and a violation of the South Carolina Unfair Trade Practices Act. After filing an answer, Harrelson filed a motion to compel arbitration, attempting to force Mary to arbitrate her claims under the terms of the arbitration agreement that was a part of the Lease. Following the hearing, the circuit court granted the motion to compel arbitration. After

an arbitration award in Mary's favor, this timely appeal followed.[1]

## STANDARD OF REVIEW

The question of arbitrability of a claim is an issue for judicial determination unless the parties provide otherwise. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). This determination is subject to de novo review. *Gissel v. Hart*, 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 148, 644 S.E.2d 705, 707 (2007).

## LAW/ANALYSIS

Mary argues the circuit court erred in determining her claims were subject to arbitration. We disagree.

Generally, if the contract providing for arbitration involves interstate commerce, the Federal Arbitration Act (FAA) displaces the state arbitration statute.[2] *Soil Remediation Co. v. Nu–Way Envtl.*, 323 S.C. 454, 459–60, 476 S.E.2d 149, 152 (1996) ("If the arbitration agreement in the instant controversy is covered by the FAA, then ... the FAA preempts S.C.Code Ann. § 15–48–10(a).... For the Federal Act to apply, the commerce involved in the contact must be interstate or foreign."). The FAA requires the enforcement of an arbitration agreement upon proof (1) that a written agreement to arbitrate exists, and (2) that the written agreement is contained within a contract involving "commerce." 9 U.S.C.A. § 2 (1947). However, Mary argues the FAA does not apply to insurance contracts in South Carolina.

---

1. At oral argument before this court, counsel for Mary acknowledged his client traded in the Nissan Murano. Mary subsequently leased a second vehicle and selected credit life insurance coverage. When James passed away, the proceeds of the credit life insurance policy from the second vehicle were paid to Mary.

2. There is no dispute the transaction here included a written agreement to arbitrate and involved interstate commerce as Mary is a South Carolina resident, Harrelson is a North Carolina corporation, the vehicle was manufactured in Tennessee, and financing was provided by Nissan–Infiniti LT of California.

Section 15–48–10(b)(4) of the South Carolina Code (Supp. 2012) provides that a written agreement to arbitrate shall not apply to "any claim arising out of personal injury, based on contract or tort, or to any insured or beneficiary under any insurance policy or annuity contract." Mary correctly states the FAA's mandate conflicts with section 15–48–10(b)(4). *See Am. Health & Life Ins. Co. v. Heyward,* 272 F.Supp.2d 578, 582 (D.S.C.2003) (holding section 15–48–10(b)(4)'s prohibition on arbitration "reverse preempts" the FAA through application of the McCarran–Ferguson Act and "prohibits the enforcement of arbitration clauses in insurance policies governed by South Carolina law"); *see also Cox v. Woodmen of The World Ins. Co.,* 347 S.C. 460, 468, 556 S.E.2d 397, 402 (Ct.App. 2001) (concluding section 15–48–10(b)(4) "reverse preempts" the FAA through the application of the McCarran–Ferguson Act). The contract in dispute here is not an insurance contract, and the provision in the lease did not create an insurance policy or a duty to insure. Therefore, Mary's causes of action against Harrelson are not the claims of "any insured or beneficiary under any insurance policy" that would exempt this action from arbitration. Mary urges an expansive reading of section 15–48–10(b)(4), contending the statute precludes arbitration of any claim related to a contract for insurance. We find this assertion without merit.

"In interpreting a statute, this [c]ourt's primary function is to ascertain the intent of the legislature." *Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997). "In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation." *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 229, 417 S.E.2d 592, 593 (1992).

In *Cox v. Woodmen of World Insurance Company,* this court found section "15–48–10(b)(4) was enacted for the purpose of regulating the business of insurance," but also concluded the statute is a "specific exemption *limited to entities within the insurance industry." Cox,* 347 S.C. at 468, 556 S.E.2d at 402 (emphasis added). Moreover, although not binding upon this court, a federal district court applied section 15–48–10(b)(4) and concluded "the McCarran–Ferguson Act precludes the application of the FAA to arbitration clauses

contained *in insurance policies* governed by South Carolina law." *Am. Health,* 272 F.Supp.2d at 582 (emphasis added). Accordingly, we reject Mary's expansive interpretation of the statute and conclude the General Assembly did not intend for the arbitration exception of section 15–48–10(b)(4) to apply to automobile lease agreements that only have a tangential relationship to an insurance policy, but was instead intended to apply directly to an insurance contract.

The FAA and section 15–48–10(b)(4) conflict with one another only when a litigant seeks to enforce an arbitration agreement contained in an insurance policy governed by South Carolina law. Here, the parties' arbitration agreement was part of an automobile lease by Harrelson, not an insurance contract. As part of the Lease, Mary selected optional credit life insurance and chose to pay premiums up front through its inclusion in the financing agreement between the parties. The terms of the Lease included the offer to secure credit life insurance from Life Investors in exchange for the payment of the premium. Mary paid the premiums to Harrelson and the dealership accepted and retained those payments while failing to procure an insurance policy from Life Investors. As a result, Mary's selection of optional insurance did not create a separate, binding insurance contract, but instead arose out of the original Lease. Moreover, Mary did not allege in her complaint that she was an "insured or beneficiary under any insurance policy" as stated in section 15–48–10(b)(4). Instead, Mary's complaint alleged Harrelson breached its fiduciary duty and breached the parties' contract by failing to procure the credit life insurance from Life Investors. Because Mary's asserted causes of action arise out of an automobile lease agreement and not an insurance contract, the circuit court properly held Mary was required to submit her claims against Harrelson to binding arbitration. *See Cox,* 347 S.C. at 468, 556 S.E.2d at 402 (holding section 15–48–10(b)(4) is a specific exemption limited only to entities within the insurance industry).

**CONCLUSION**

We conclude the Lease between Mary and Harrelson did not create a duty to insure. Therefore, the FAA governs the

Lease in this case and compels arbitration. Accordingly, the order of the special circuit court judge is

**AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.