# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Russell L. Bauknight, as Trustee of The James Brown 2000 Irrevocable Trust and the James Brown Legacy Trust and as Personal Representative of the Estate of James Brown; Tommie Rae Brown, individually and on behalf of her minor child, James B.; Daryl J. Brown, individually and on behalf of his minor child, Janise B.; Lindsey Delores Brown; Deanna J. Brown Thomas; Jason Brown-Lewis, Yamma N. Brown, individually and on behalf of her minor children Sydney L. and Carrington L.; Tonya Brown; Venisha Brown; Larry Brown; and Terry Brown, Respondents,

v.

Adele J. Pope, Appellant.

Appellate Case No. 2023-001253

———————

Appeal from Richland County
Clifton Newman, Circuit Court Judge

———————

Opinion No. 28273
Heard December 11, 2024 – Filed April 16, 2025

———————

## AFFIRMED AS MODIFIED

———————

Alvin J. Hammer, of Law Offices of Gedney M. Howe III, P.A., of Charleston; Adam Tremaine Silvernail, of Law Office of Adam T. Silvernail, LLC, of Columbia; Daryl L. Williams, of Gertz & Moore, LLP, of Columbia; and William Jeffrey Smith, of Newberry, all for Appellant.

Mark V. Gende, Kenneth B. Wingate, and Aaron Jameson Hayes, all of Sweeny Wingate & Barrow, P.A., all of Columbia, for Respondents.

---

**PER CURIAM:** This appeal arises from an order of the circuit court striking the answer of Adele J. Pope for what the circuit court called her "pattern of frivolous filings and repeated attempts to delay, thereby demonstrating willfulness and bad faith" in a lawsuit against her for alleged misconduct during and after the time she served as personal representative of the Estate of James Brown. We affirm.

## I.      Facts and Procedural History

James Brown—"'The Hardest-Working Man in Show Business' and 'The Godfather of Soul'"—died in 2006. *Wilson v. Dallas*, 403 S.C. 411, 416, 743 S.E.2d 746, 749 (2013). He left an estate whose $4.7 million value was accepted—after an audit— by the Internal Revenue Service. In his will he provided that everything in his estate except "his personal and household effects" went to "The James Brown 2000 Irrevocable Trust." *Id.* Of those funds, "$2 million . . . [was] designated for the education of Brown's grandchildren." 403 S.C. at 417, 743 S.E.2d at 750. The rest he left to "The James Brown 'I Feel Good' Trust." *Id.* We explained in *Wilson v. Dallas* that "Brown declared" the "'I Feel Good' Trust" funds,

> shall be used solely for the tuition, educational expenses, and financial assistance of . . . poor and financially needy children, youth, or young adults (Who are both qualified and deserving) who seek and have need of such assistance to obtain and further their education at the many educational entities and/or institutions available in the States of South Carolina and Georgia.

*Id.* (alteration in original).

As we recently understated, "Disputes over the estate of entertainer James Brown . . . have persisted in the years since his untimely death." *In re Est. of Brown*, 430 S.C. 474, 478, 846 S.E.2d 342, 344 (2020). To this day, almost 20 years later, no funds from Brown's estate have been used to fulfill the purposes he set forth in the "'I Feel Good' Trust."

Pope and Robert L. Buchanan Jr. were appointed in 2007 as special administrators and then personal representatives of Brown's estate and trustees of the 2000 Irrevocable Trust after the original representatives were forced out on allegations of misconduct. *Wilson*, 403 S.C. at 416, 419, 743 S.E.2d at 749, 751. In 2008, former Attorney General Henry D. McMaster intervened in the administration of the estate and negotiated a settlement agreement that called for the removal of Pope and Buchanan as personal representatives, placing Respondent Russell L. Bauknight in their stead. 403 S.C. at 420, 743 S.E.2d at 751. The circuit court approved the settlement in 2009, *id.*, and we affirmed the removal on appeal, 403 S.C. at 449, 743 S.E.2d at 767.

Upon her removal from the roles of personal representative and trustee in 2009, Pope began a massive effort to undo the settlement and her removal and to reassert her control over Brown's estate and the trusts created under it. In 2010, Bauknight and others filed this lawsuit against Pope seeking damages for her misconduct in her former role as personal representative and trustee and for her continued actions to the detriment of the estate and the trusts even after she was removed from those roles. On April 10, 2023, Bauknight filed a motion for sanctions against Pope pursuant to Rule 11, SCRCP, and the South Carolina Frivolous Proceedings Sanctions Act. Bauknight argued Pope engaged in repeated "frivolous" and "serial, abusive filings" for the purpose of delay. Bauknight quoted this Court's March 28, 2023 order in which we stated, "This case has been ongoing since 2010, and [Pope]'s frivolous filings and attempts to repeatedly delay the matter have frustrated the prompt resolution of this case." *See infra* note 1.

The circuit court held a hearing on Bauknight's motion and issued an order imposing sanctions against Pope of $32,137.50 in attorneys' fees and costs and striking Pope's answer in the 2010 lawsuit. The circuit court provided five reasons to support its determination that sanctions were proper. Specifically, the circuit court stated:

> First, the South Carolina Supreme Court's March 28, 2023 Order found that Pope's petition to that court was frivolous and that Pope has exhibited a pattern of frivolous filings and repeated attempts to delay [this lawsuit].[1] These findings by the State's highest court alone are

---

[1] The relevant language of the Supreme Court's March 28, 2023 order states:

> We prohibit Appellant from filing any additional requests to have the automatic stay lifted in either the circuit court or this Court. We take this opportunity to caution Appellant that further frivolous filings in the

sufficient to sustain this order granting sanctions.

Second, Pope has been warned repeatedly of serious consequences for her litigation conduct by both the Supreme Court and this Court. Pope was warned by the Supreme Court on two prior occasions about her improper conduct and on each occasion was threatened with the possibility of contempt. On June 10, 2015, the South Carolina Supreme Court rebuked Pope for making meddlesome filings in Estate-related matters in which she has no standing:

> Pope is hereby prohibited from filing any further motions or appeals in actions involving the Estate and Trust of James Brown, such as the above actions, in which she clearly has no standing. We caution Pope that continued attempts to involve herself in the resolution of the Estate and Trust may result in contempt charges.

Order, Lead Appellate Case No. 2013-001649 (S.C. S. Ct., June 10, 2015).

On August 10, 2020, in response to a petition alleging Pope had violated the June 10, 2015 order by attempting to become the personal representative of the estate of Venisha Brown (one of Plaintiffs' counsels' clients in [this lawsuit]), the Supreme Court again warned Pope:

> Upon request from the Clerk of Court, Mark V. Gende, counsel for Venisha Brown's estate, provided the Court with an affidavit to support the request for a finding of contempt . . . This affidavit asserts that [Pope's] actions are in violation of the June 10, 2015 order.

---

circuit court or this Court in this matter may result in contempt proceedings. This case has been ongoing since 2010, and Appellant's frivolous filings and attempts to repeatedly delay the matter have frustrated the prompt resolution of this case.

*Bauknight v. Pope*, S.C. Sup. Ct. Order filed March 28, 2023.

We decline to issue a rule to show cause at this time and hold that request in abeyance pending [Pope's] future compliance with this order and our order dated June 10, 2015 . . . If [Pope] fails to conform to these instructions as ordered and takes any further action with respect to any case related to the Estate of James Brown, which includes any proceeding in the estate of Venisha Brown, a rule to show cause will be issued, and any and all violations of the orders of this Court will be considered as grounds for holding her in contempt.

Order, Appellate Case No. 2020-000764 (S.C. S. Ct., Aug. 10, 2020).

This court has also warned Pope that her serial filings to lift the stay[2] in [the lawsuit] were improper:

The successive motions of the Defendant are improper, and there is no right to repeated petitions to the Court to change its rulings on matters previously decided, especially when Defendant has already appealed a previously denied motion.

Order, Case No. 2010-CP-40-04900 (filed July 28, 2020).

Sanctions against Pope are warranted because the South Carolina Supreme Court has found her petition to lift stay was frivolous, that Pope has engaged in other frivolous filings, and that Pope has repeatedly engaged in efforts to delay the deposition of [the lawsuit]. Additionally, this court has warned her of her repeated, improper filings. Pope has ignored these warnings.

Third, Pope has a history of improper conduct. In addition to the examples meriting the courts' warnings listed above, at the hearing counsel for the Estate detailed additional examples of similar improper,

_____

[2] Pope filed numerous appeals from rulings of the circuit court. Despite the fact she was the appellant in each case, she repeatedly filed motions to lift the Rule 241(a), SCACR, automatic stay, in many instances even after identical motions had been denied by the circuit court and this Court.

frivolous, and/or delaying conduct by Pope in [the lawsuit] and related appeals, including: a) Causing substantial delay by opposing the consolidation of some or all of [the lawsuit] with Aiken Case 1337, Pope's fee claim case against the Estate. Case 1337 went to trial in 2017. b) Appealing almost thirty pre-trial orders in [the lawsuit], only to abandon most of these appeals. c) Engaging in abusive appellate practice in Appellate Case 2018-02229, dealing with several [lawsuit] pretrial orders, resulting in the appellate court striking two of Pope's briefs, a designation of matter, and a record on appeal. And d) concerning the two Rule 59(e) motions, also heard on April 14, 2023, (*see* related order denying the same), Pope filed a motion to reconsider this Court's referral of those motions to Judge Casey Manning (who had ruled on the original orders), resulting in further delaying of this matter. These actions cited by counsel for the Estate, and others appearing in the record of the hearing, when taken together appear to this Court, to support the Supreme Court's finding that "[Pope's] frivolous filings and attempts to repeatedly delay this matter have frustrated the prompt resolution of this case."

Fourth, Pope offered no reasonable explanation or justification for her conduct that would allow the court to excuse her actions. Instead, the affidavits of Pope, Silvernail, Williams, Smith, and Carpenter, and Mr. Silvernail's oral argument, merely restated Pope's position that her filings were all proper. Neither Pope nor counsel ever admitted to any improper or even questionable conduct, despite the clear words of the Supreme Court's March 28, 2023 Order. In fact, the affidavits cited never even acknowledged the Supreme Court's order, and at the hearing Silvernail made only one reference to being surprised by the order's severity. Absent any reasonable justification of Pope's conduct, the Court is left to conclude Pope's conduct is willful and purposeful.

Fifth, Rule 11, South Carolina Rules of Civil Procedure (SCRCP) and the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA) provide the legal basis for sanctioning abusive and/or frivolous filings.

The circuit court then explained the striking of Pope's answer.

In its filing, the Estate requested the imposition of sanctions, jointly and severally, on each attorney who participated in the subject filings. While there are good and solid grounds to do so, at this time this Court

chooses to sanction only Pope because only she has been warned repeatedly by the highest court of our state, although all of Pope's counsel should have noted the seriousness of each warning and acted prudently. Pope, though, has chosen to disregard those warnings and thus has shown "bad faith, willful disobedience or gross indifference" justifying a severe sanction. *QZO, Inc. v. Moyer*, 358 S.C. 246, 257, 594 S.E.2d 541, 547 (Ct. App. 2004) [(quoting *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 198-199, 511 S.E.2d 716, 719 (Ct. App. 1999))]. It appears from the argument of the Estate's counsel and the affidavits provided by Pope, that she has directed the decisions and actions of her counsel, who appear to have taken more of a read-and-sign approach to her filings. The Court now wants to be very clear to Pope and to her attorneys, Silvernail, Williams, Smith, and Carpenter (and any other attorney who may represent Pope in this matter) that they are on notice that any further frivolous or improper filings of any nature or any further attempts to delay this matter will not be tolerated and will result in a rule to show cause and/or the imposition of sanctions on the attorney(s) consistent with the gravity of their actions. Further, counsel for Pope are admonished not to enable Pope's frivolous and improper conduct by merely filing papers for her without serious legal vetting and advising. Notwithstanding the Court's decision not to sanction Pope's counsel at this time, the conduct of Pope detailed above merits severe sanctions.

Therefore, the court imposes the following:

(1) Pope will pay the costs and attorney's fees related to the Estate's defense of her serial motions to lift stay, excluding the initial motion but including the petition to the Supreme Court. The Estate has submitted an affidavit of attorneys' fees and costs in the amount of $32,137.50. The court has reviewed the affidavit and finds it reasonable under the standard set out in *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d [313] (1991). Therefore, Pope is directed to pay $32,137.50 to the Estate within 30 days of the date of this Order.

(2) Pope's Answer in [this lawsuit] is stricken, and she is declared to be in default. That Pope has engaged in a pattern of frivolous filings and repeated efforts at delay, thereby demonstrating willfulness and bad faith, is not just the opinion of this Court, but it is the opinion of the Supreme Court and therefore is now the law of the case. Repeated

frivolous filings and efforts to delay the prompt resolution of [this lawsuit], which is already over a decade old, deserve the harshest sanction available to this court.  The court has assessed this sanction under the provisions of Rule 11, SCRCP and the FCPSA, and it finds striking the Answer proper.   Striking Pope's Answer is an appropriate consequence for a litigant who has repeatedly delayed court action by frivolous filings and other improper delay tactics.

## II.    Analysis

Pope argues the sanctions against her are improper under Rule 11, SCRCP because (1) her multiple attempts to lift the stay were not frivolous and did not delay the case; (2) she was sanctioned as a party; (3) attorneys' fees and costs were improperly determined; and (4) it was improper to strike her answer.  We disagree and affirm.[3]

"A court imposing sanctions under Rule 11 should, in its order, describe the conduct determined to constitute a violation of the Rule and explain the basis for the sanction imposed." *Runyon v. Wright*, 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996).  "The decision to impose sanctions is one in equity, and thus the appellate court reviews the circuit court's factual findings de novo." *Pee Dee Health Care, P.A. v. Est. of Thompson*, 424 S.C. 520, 538 n.11, 818 S.E.2d 758, 768 n.11 (2018).  "If the appellate court agrees with the factual findings" of the circuit court, the appellate court determines whether the circuit court acted within its discretion when imposing sanctions. *Id.*

Rule 11(a), SCRCP, provides:

> Every pleading, motion or other paper of a party represented by an attorney shall be signed in his individual name by at least one attorney of record who is admitted to practice law in South Carolina, and whose address and telephone number shall be stated . . . .   The written or electronic signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

---

[3] Because we affirm the circuit court's sanctions order under Rule 11, SCRCP, we find it unnecessary to address whether the sanctions were also proper under the South Carolina Frivolous Proceedings Sanctions Act.

. . .

>If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Sanctions may include reasonable attorneys' fees and costs incurred by the party defending against the frivolous action "or a directive of a nonmonetary nature designed to deter the party or the party's attorney from bringing any future frivolous action or action in bad faith." *Runyon*, 322 S.C. at 19, 471 S.E.2d at 162.

First, Pope argues her multiple attempts to lift the stay were not frivolous and did not delay the civil lawsuit. At oral argument, Pope argued the circuit court's order was improper because her six attempts to lift the stay were "successive motions" brought on different grounds, not "repetitive motions."

The circuit court's June 28, 2020 order denying Pope's fourth attempt to lift the stay found Pope had "no right to repeated petitions to the Court to change its rulings on matters previously decided, especially when Defendant has already appealed a previously denied motion." This Court's March 28, 2023 order found Pope's "frivolous filings and attempts to repeatedly delay the matter have frustrated the prompt resolution of this case." Thus, the circuit court found sanctions were proper because "the South Carolina Supreme Court has found her petition to lift the stay was frivolous," Pope "engaged in other frivolous filings," and "Pope has repeatedly engaged in efforts to delay the disposition" of this case.

The circuit court order describes the conduct the circuit court considered in determining Pope's repeated attempts to lift the stay were frivolous and the basis for the sanctions imposed—finding Pope's "successive motions" were also frivolous "repetitive motions" that delayed this case. The circuit court sufficiently stated the grounds for sanctions, and a review of the record supports these factual findings. Thus, to prevent further delay, the circuit court acted within its discretion in imposing sanctions.

Second, Pope argues it is improper to sanction her as a party. Rule 11 is unambiguous—sanctions may be imposed upon a represented party. *See* Rule 11(a),

SCRCP ("If a pleading, motion, or other paper is signed in violation of this Rule, the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ."); *see also Ex parte Wilson*, 367 S.C. 7, 15, 625 S.E.2d 205, 209 (2005) ("If a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should be enforced.").

The circuit court found there "are good and solid grounds" to sanction Pope and her counsel, but chose to sanction "only Pope because only she has been warned repeatedly by the highest court of our state." The circuit court explained its reasoning in sanctioning Pope and not her counsel. Thus, the circuit court acted within its discretion in sanctioning Pope.

Third, Pope argues attorneys' fees and costs were improperly determined. Again, Rule 11 is unambiguous—appropriate sanctions "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Rule 11(a), SCRCP. "[I]f appropriate under the facts of the case, the court may order a party and/or the party's attorney to pay a reasonable monetary penalty to the party or parties defending against the frivolous action or action brought in bad faith." *Runyon*, 322 S.C. at 19, 471 S.E.2d at 162.

The circuit court determined Pope's serial motions to lift the stay were frivolous. After reviewing Bauknight's affidavit of attorneys' fees and costs and analyzing the six factors outlined in *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991), the circuit court imposed a monetary penalty of $32,137.50.[4] The amount related to Bauknight's defense of Pope's "serial motions to lift stay, excluding the initial motion but including the petition to the Supreme Court." Thus, the circuit court acted within its discretion when sanctioning Pope for attorneys' fees and costs.

However, Bauknight concedes a time-entry—totaling $750.00—was inadvertently included in the fee affidavit, but the amount was still used to calculate attorneys' fees and costs. While the circuit court acted within its discretion when sanctioning Pope for costs incurred in defense of her frivolous filings, Bauknight is not entitled to

---

[4] *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315 (finding the determination of the reasonableness of attorneys' fees and costs should take into consideration six factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained;(6) customary legal fees for similar services").

unrelated attorneys' fees and costs. Thus, we modify the sanctions amount of $32,137.50 to reduce it by $750.00. *See Cannon v. Georgia Att'y Gen. Off.*, 397 S.C. 541, 550-51, 725 S.E.2d 698, 703-04 (2012) (holding the circuit court acted within its discretion in imposing sanctions, but modifying attorneys' fees and costs for the specific sanctioned conduct).

Fourth, Pope argues it was improper to strike her answer. Striking an answer is "harsh medicine that should not be administered lightly." *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 543, 489 S.E.2d 679, 682 (Ct. App. 1997). Recognizing the striking of an answer as an available sanction, the court of appeals explained:

> Before invoking this severe remedy, the trial court must determine that there is some element of bad faith, willfulness, or gross indifference to the rights of other litigants. The sanction imposed should be reasonable, and the court should not go beyond the necessities of the situation to foreclose a decision on the merits of a case. The sanction should be aimed at the specific misconduct of the party sanctioned.

*Id.* (citations omitted).

Specifically, the circuit court found Pope's fifth attempt to lift the stay was "a vexatious, serial, and abusive repetition of the same motion that she has lost each previous time." Pope's repeated attempts to lift the stay demonstrate "bad faith, willful disobedience or gross indifference, justifying a severe sanction." Cir. Ct. Order, Case No. 2010-CP-40-04900 (filed May 8, 2023) (citing *QZO, Inc. v. Moyer*, 358 S.C. 246, 257, 594 S.E.2d 541, 547 (Ct. App. 2004)). Striking Pope's answer in response to her repetitive attempts to lift the stay was "an appropriate consequence for a litigant who has repeatedly delayed court action by frivolous filings and other improper delay tactics." Thus, the circuit court acted within its discretion when striking Pope's answer.

### III.   Conclusion

For the reasons explained above, we affirm the circuit court's imposition of sanctions under Rule 11 and modify the monetary sanctions amount of $32,137.50 to reduce it by $750.00, for a total amount due of $31,387.50.

**AFFIRMED AS MODIFIED.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**