0792

Louis M. JAFFE, Appellant v. John F. GIBBONS, Sr., William M. Wells, III, and Intertec Data Systems Corporation, Defendants, of whom John F. Gibbons, Sr., is Respondent.

(351 S. E. (2d) 343)

Court of Appeals

*Thomas S. Tisdale, Jr.* and *Timothy W. Bouch,* of *Young, Clement, Rivers & Tisdale,* Charleston, *for appellant.*

*Harold A. Boney,* of *Howell, Gibson & Boney,* Beaufort, *for respondent.*

Heard June 25, 1986.

Decided Sept. 2, 1986

GARDNER, Judge:

Jaffe sued Gibbons and the other named defendants alleging, *inter alia*, the breach of an alleged contract to sell real estate and, additionally, that he was entitled to specific performance of the alleged contract. On July 10, 1984, the trial court ordered that the actions against Gibbons and the other defendants be severed and refiled as separate actions, all within 30 days. Jaffe then sued Gibbons in federal court. Gibbons moved for summary judgment as to the original complaint. Jaffe filed a motion for a voluntary nonsuit of the original action against Gibbons on September 6, 1984. The appealed order denied the motion for voluntary nonsuit and granted summary judgment in favor of Gibbons. We reverse.

The issues on appeal are whether (1) the trial court erred in granting summary judgment and (2) the trial court erred in failing to grant the motion for a voluntary nonsuit.

Jaffe contends that he had negotiated an agreement with one Patrick J. Robertson for the purchase of a lot (Lot 15) on Sea Pines Plantation, Hilton Head Island, South Carolina, and that after this agreement, one Maxwell F. Boyle, acting as attorney for William M. Wells III, et al., informed him that Wells had no intention of consummating an alleged agreement to purchase another lot (Lot 17) which is in the same subdivision; Boyle prevailed upon Jaffe to negotiate the purchase of Lot 17 rather than Lot 15. Jaffe then began negotiations to purchase Lot 17 from Gibbons.

It developed that Gibbons had sued Wells over his contract to purchase Lot 17 and this suit, primarily concerning the disposition of the earnest money, was pending during the negotiations between Jaffe and Gibbons.

The record discloses that on or about October 13 or 14, 1983, Jaffe and Gibbons engaged in two telephone conversations about Lot 17; an agreement was reached for the sale to Jaffe of Lot 17 for $580,000. On October 14, 1983, Jaffe's attorney, Herbert L. Novit, prepared an instrument setting forth the agreement for the purchase of the property, had Jaffe sign it and then mailed it to Gibbons' attorney, Robert

Vaux. Vaux mailed it to Gibbons at his address in Ohio. Upon receiving the written agreement, Gibbons signed it and returned it to Vaux, his attorney, along with an executed deed to Jaffe, with instructions authorizing Vaux to delete two paragraphs from the agreement before having Jaffe sign or initial the changes. Interestingly, Vaux was then instructed not to deliver the completed instrument pending further instructions.

The paragraphs Vaux was authorized and directed to delete were (1) paragraph 10 which provided that Gibbons would pay the realtor and (2) paragraph 13 which provided that Gibbons would pay Jaffe half of the net recovery, if any, from Wells and also that Gibbons would warrant that Wells had no claim upon Lot 17.

On October 19, 1983, Jaffe met with Vaux at Vaux' office and initialed the deletions required by Gibbons' instructions to his attorney Vaux, and which Vaux admits he was authorized by Gibbons to make. Jaffe then asked Vaux to have Gibbons initial the deletions and to mail a copy to his attorney, Novit. Jaffe then paid $100,000 as earnest money to Novit, who was named and constituted by the agreement as the escrow agent for both parties.

An agent of Wells flew to Ohio the next day on October 20, 1983, and Gibbons settled his suit with Wells by selling and conveying to Wells Lot 17. Presumably the negotiations preceding this sale had occurred before or coincidentally with the mailing of the other agreement to Vaux; hence the instructions by Gibbons to Vaux not to deliver the instrument and deed to Jaffe until Gibbons had authorized him to do so; obviously a devious plan if such it was. In the meantime on October 19, 1983, Jaffe had relinquished his right to purchase Lot 15 from Patrick J. Robertson. Wells then also purchased that lot. Ostensibly, upon conveying Lot 17 to Wells, Gibbons instructed Vaux that he was not going to sell Lot 17 to Jaffe.

The question presented is simply whether there was a meeting of the minds between Jaffe and Gibbons which constitutes an enforceable agreement that Gibbons would sell and convey to Jaffe Lots 17 and that Jaffe would purchase it. We think the resolution of this question is a matter of fact and not law as held by the appealed order.

In summary the appealed order held that Gibbons had not assented to the deletions and further that one of the deletions provided that there would be a separate written agreement pertaining thereto.

The general rule is that where both parties have ■ signed a contract, the signing by the first party is in effect his proposal or offer, and the signing by the second party is his acceptance thereof; the writing then represents or evidences the bargain between them. *Champion v. Hammer*, 178 Or. 595, 169 P. (2d) 119 (1946).

The same rule applies to a counter offer. There is ■■ evidence of record that Gibbons signed the contract and returned it to his attorney authorizing his attorney to delete the two paragraphs and have Jaffe initial the deletions. When Jaffe initialed the deletions, he accepted the counter offer, thereby creating a binding contract. And we so hold. Whether Gibbons was endeavoring "to have his cake and eat it too" by dealing with both Wells and Jaffe is a question of fact which should be determined by a jury.

Gibbons insists that there was no assent by him to the deletions and that Jaffe's acceptance and initialing thereof were not assented to by him. We disagree; Gibbons signed the contract and coincidentally mailed it to his attorney with instructions to delete the two paragraphs and have Jaffe initial them. It is a question of fact as to whether this was paramount to signing the contract after the deletions were made with the understanding that Jaffe would assent thereto and evidence his assent by initialing the deletions. Stated differently, it is a question of fact whether Gibbons signed the agreement presupposing the deletions and thus made a counter offer which was accepted by Jaffe.

A similar situation occurred in the case of *Smith v. Onyx Oil and Chemical Co.*, 218 F. (2d) 104, 50 A.L.R. (2d) 216 (3rd Cir. 1955) wherein it was held that an effective contract may be found to have been intended where, after extensive negotiations with a manufacturer's attorney who had been given authority to complete the contract on behalf of the manufacturer, the attorney sent an instrument incorporating the terms agreed upon to the seller for its signature with the statement that upon receipt of such signed paper, the manufacturer would send the seller a signed contract for its files,

even though the manufacturer, upon receipt of the seller's signature, never did sign and return a copy.

Moreover, it has long been a paradigm of South Carolina law that when a contract signed by one party only is accepted by the other party, it becomes binding upon both just as if it were signed by both. *Peddler, Inc. v. Rikard*, 266 S. C. 28, 221 S. E. (2d) 115 (1975); *Bullwinkle v. Cramer*, 3 S. C. 776, 27 S. E. 376, 13 Am.St.R. 645 (1887). This is applicable to the case before us because Jaffe only initialed and did not sign his full name to the deletions; the initials, in our opinion, amount to both a signing and an acceptance by Jaffe of the counter offer.

A contract does not always require the signature of both parties; it may be sufficient, if signed by one and accepted and acted on by the other. *Peddler, Inc. supra.* Jaffe acted upon the counter offer by initialing the deletions.

We next address the appealed order's holding with reference to paragraph 13 which was deleted by these words "deleted and replaced with a side agreement to be drafted and executed." Paragraph 13 is as follows:

13. *The Wells Litigation:* The Seller hereto acknowledges that he is presently involved in litigation against William M. Wells, III ("Wells") as it relates to a previous contract to purchase the within property. Seller hereby warrants and convenants that Wells has no claim against the Property and that the litigation does not involve title to the Property but deposits made by Wells which are claimed in whole or in part by Seller. As further material consideration to this transaction, Seller agrees that he will diligently prosecute his claim against Wells and further agrees to divide with Purchaser one-half (½) of the total net recovery to Seller. Such net recovery shall consist of all funds due or received by Seller as a result of such litigation or claim against Wells less court costs and attorney's fees. In the event no recovery is made then, in that event, Purchaser shall have no responsibility for the payment of any portion of Seller's costs or attorney's fees.

The trial court held that this agreement was material ■ to the contract between the parties. We disagree. By paragraph 13 Gibbons agreed that he would divide the net proceeds, if any, from the suit against Wells and that he would diligently pursue the suit. Under the agreement there was nothing for Jaffe to perform and if no recovery was made, Jaffe would be entitled to nothing. By requiring this deletion, Gibbons relieved himself of the obligation of suing Wells; only Jaffe might be damaged by the failure of Gibbons to pursue the suit against Wells; Gibbons should not be permitted to complain and we so hold. *See* 17 C.J.S. *Contracts* Section 49 (1980).[1] And more importantly by this duplicity, Gibbons should not be empowered with impunity to sell Lot 17 to Wells and to abort his contract with Jaffe. And we so hold.

For the foregoing reasons, we hold that there exists material issues of fact involving whether there was a meeting of minds about the agreement between Jaffe and Gibbons which resulted in a contract binding upon Gibbons. The appealed order is, therefore, reversed and the order granting summary judgment in favor of Gibbons is set aside.

Having reversed the order insofar as summary judgment was granted, we also reverse the appealed order's refusal to grant Jaffe a voluntary nonsuit as to the cause of action against Gibbons because the alleged prejudice of the motion being made at the time of trial, i.e., the hearing on the motion for summary judgment, is now nonexistent.

For the reasons stated, the appealed order is reversed and remanded for entry of judgment in accordance with this order.

Reversed and remanded.

GOOLSBY and MENDENHALL, JJ., concur.

---

[1] "The enforceability as a contract of an agreement which leaves a matter for future negotiation depends on the relative importance and severability of the matter left to the future. It is a question of degree [i.e., a question of fact] to be determined by whether the matter left open is so essential to the bargain that [the] inability to enforce that promise would render enforcement of the rest of the agreement unfair." *Id.* at pp. 703-704.