786 S.E.2d 571

Richard **WILSON**, Michael J. Antoniak, Jr., Marsha L. Antoniak, Anita L. Belton, Prescott Darren Bosler, Johnny Calhoun, Sallie Calhoun, Cynthia Gary, Robert Wayne Gary, Eugene P. Lawton, Jr., Jeanette Norman, James Robert Shirley, Robert W. Spires, Crystal Spires Wiley, Lewis S. Williams, Janie Wiltshire, Benjamin Franklin Wofford, Jr., and Rebecca Hammond Wofford, Respondents,

v.

Laura B. **WILLIS** and Jesse A. Dantice, individually and as agents and/or brokers for Southern Risk Insurance Services, LLC, Travelers Casualty Insurance Company of America, Allied Property and Casualty Insurance Company, Peerless Insurance Company, Montgomery Mutual Insurance Company, Safeco Insurance Company of America, and Foremost Insurance

---

5. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Company; Southern Risk Insurance Services, LLC, Travelers Casualty Insurance Company of America, Allied Property and Casualty Insurance Company, Peerless Insurance Company, Montgomery Mutual Insurance Company, Safeco Insurance Company of America, and Foremost Insurance Company, Defendants,

Of whom Peerless Insurance Company, Montgomery Mutual Insurance Company, and Safeco Insurance Company of America are the Appellants,

and

Of whom Laurie Williams is a Respondent.

**Appellate Case No. 2014–000946.**
**No. 5387.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2015.
Decided March 2, 2016.
Rehearing Denied June 24, 2016.

400

402

C. Mitchell Brown, William C. Wood, Jr., Allen Mattison Bogan, and Miles Edward Coleman, of Columbia; and Robert Curt Calamari, of Myrtle Beach, all of Nelson Mullins Riley & Scarborough, LLP, for appellants.

Thomas E. Hite, Jr., of Hite and Stone, of Abbeville, for Respondents Richard Wilson, Cynthia Gary, Robert Wayne Gary, Robert W. Spires, Crystal Spires Wiley, Lewis S. Williams, Michael J. Antoniak, Jr., Marsha L. Antoniak, Eugene P. Lawton, Jr., Anita L. Belton, Jeanette Norman, James Robert Shirley, Johnny Calhoun, Sallie Calhoun, Benjamin Franklin Wofford, Jr., Rebecca Hammond Wofford, Prescott Darren Bosler, and Janie Wiltshire; and Jane Hawthorne Merrill, of Hawthorne Merrill Law, LLC, of Greenwood, for respondent.

WILLIAMS, J.

Peerless Insurance Company (Peerless), Montgomery Mutual Insurance Company (Montgomery), and Safeco Insurance Company (Safeco) (collectively "the Insurers") appeal the circuit court's denial of their motions to dismiss the claims and compel arbitration in fourteen related actions. The Insurers argue the court erred in (1) ruling no valid contract containing

an arbitration provision existed between the parties, (2) determining the arbitration provision at issue was too narrow to encompass the causes of action, (3) refusing to compel arbitration of claims brought by nonsignatories, (4) finding the claims against the Insurers were not encompassed by the arbitration provision because their alleged actions constituted illegal and outrageous acts unforeseeable to a reasonable consumer in the context of normal business dealings, and (5) holding the Insurers waived their right to compel arbitration. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

This appeal arises from fourteen related lawsuits—filed in Abbeville County, South Carolina, between November 1, 2012, and August 28, 2013—against two local insurance agents, Laura Willis and Jesse Dantice, and their agency, Southern Risk Insurance Services, LLC (Southern Risk). Willis's customers (the Insureds) brought twelve of the suits,[1] alleging causes of action for violation of the South Carolina Unfair Trade Practices Act,[2] common law unfair trade practices, fraud, and conversion. The Insureds also named the Insurers as defendants in the action, arguing they were liable under a respondeat superior theory for failure to supervise or audit Willis and Southern Risk.

The Insureds allege that, while customers of Willis and Dantice, they were "victims of many illegal and improper tactics used by [Willis, Dantice, and the Insurers] to corner the retail insurance market in Abbeville County, South Carolina[,] and destroy all competition." The claims and allegations in all of the suits include, *inter alia*, that Willis forged insurance documents; issued policies on unsigned applications; changed or omitted information on insurance applications, without the Insureds' permission, to reduce quoted premiums;

---

1. The Insureds who filed suit—Lewis Williams, Johnny and Sally Calhoun, Robert Spires, Crystal Spires Wiley, Prescott Darren Bolser, Benjamin and Rebecca Wofford, Robert and Cynthia Gary, Janie Wiltshire, Marsha and Michael Antoniak, Eugene Lawton, Anita Belton, and Jeanette Norman—were all residents of Abbeville County. Laurie Williams, who filed a separate but substantially similar brief, is also a respondent in the instant appeal alongside the Insureds.

2. S.C.Code Ann. §§ 39–5–10 through–560 (1985 & Supp.2015).

submitted applications using her own personal identifying information, such as driver's license and Social Security numbers, to reduce quoted premiums; accepted cash payments she converted to her own use; and issued fake policies to customers.

According to the Insureds, Willis's actions resulted in harm to them as well as their credit rating within the insurance industry. The Insureds seek to recover from Dantice, Southern Risk, and the Insurers because these parties—as principals of their agent, Willis—had a duty to investigate, train, and supervise Willis, particularly after she "was fined, publicly reprimanded[,] and placed on probation for dishonesty by the South Carolina Insurance Commission in October 2011."

Richard Wilson and Robert Shirley (collectively "the Agents")—both of whom were local competitors of Willis and Southern Risk—filed the other two suits at issue in this case. The Agents alleged Willis, Dantice, Southern Risk, and the Insurers engaged in illegal business practices that effectively prohibited them from competing in the local insurance market, resulting in a substantial loss of clients and revenue. Further, the Agents argued the Insurers owed a duty to properly investigate, train, and supervise Willis; failed to detect and stop her wrongdoing; and engaged in statutory unfair trade practices, common law unfair trade practices or unfair competition, and tortious interference with existing and prospective contractual relations.

In their answers, the Insurers denied the majority of the Insureds' substantive claims and set forth the following defenses: failure to state a claim, statutory bar by section 39–5–40(c) of the South Carolina Code (Supp.2015), comparative fault, intervening actions of third parties, scope of agency, set off, failure to properly allege special damages, unconstitutionality of punitive damages, and limitation or bar to punitive damages. The Insurers, however, did not raise arbitration as a defense in their answers to the Insureds.

Likewise, in answering the Agents' complaints, the Insurers denied each of the factual allegations set forth and raised a number of defenses. The Insurers, for example, denied that Willis was their "authorized and acting agent and/or servant" and denied that she acted with their permission. Neverthe-

less, the Insurers did not assert arbitration as a defense in their answers to the Agents.

On October 31, 2013, the Insurers filed motions to compel arbitration and dismiss the suits, seeking to apply against the Insureds and Agents an arbitration provision from a 2010 agency agreement (the 2010 Agency Agreement) the Insurers entered into with Southern Risk.[3] The main thrust of the Insurers' argument in these motions was that each of the Insureds and Agents' claims was premised on alleged duties that would not exist but for the Insurers' contractual relationship with Southern Risk and, thus, the court should compel arbitration based upon the arbitration provision found in the 2010 Agency Agreement. According to the Insurers, the Insureds and Agents could not rely on—and seek to recover damages from the Insurers based upon—some provisions, while ignoring the arbitration provision in the agreement.

The circuit court heard arguments on the motions on January 21, 2014, and the Insureds and Agents filed memoranda in opposition to the Insurers' motions that same day. In their memoranda, the Insureds and Agents asserted no valid or enforceable agreement to arbitrate existed because the agreement upon which the Insurers based their motion was not signed by any representative of Southern Risk. The Insureds and Agents further alleged they were not signatories or parties to the 2010 Agency Agreement, and their claims against the Insurers did not fall within the arbitration clause in the agreement. The Insurers subsequently filed reply memoranda in support of their motion on February 11, 2014.[4]

On March 25, 2014, the circuit court issued an order in which it denied the Insurers' motions to compel arbitration and dismiss the suits. The Insurers then filed motions to

---

**3.** Specifically, Liberty Mutual Insurance Company (Liberty), a parent company of Montgomery and Safeco, entered into the agreement with Southern Risk.

**4.** The circuit court granted the Insurers' request to file a reply brief only to address two points raised in the memoranda in opposition. While the Insurers attached an affidavit of one of their employees to the reply memorandum, the court specifically declined to leave the record open for the addition of new evidence. Because the affidavit was not properly admitted into evidence below, we do not consider it as part of the record on appeal.

alter or amend the court's ruling, and the court denied these motions on April 21, 2014. This appeal followed.[5]

## ISSUES ON APPEAL

I. Did the circuit court err in ruling no valid contract containing an arbitration provision existed between the parties?

II. Did the circuit court err in determining the arbitration provision was too narrow to encompass the causes of action raised by the Insureds and Agents?

III. Did the circuit court err in refusing to compel arbitration of claims against the Insurers because the Insureds and Agents were nonsignatories?

IV. Did the circuit court err in finding the claims were not encompassed by the arbitration provision because the Insurers' alleged actions constituted illegal and outrageous acts unforeseeable to a reasonable consumer in the context of normal business dealings?

V. Did the circuit court err in holding the Insurers waived their right to compel arbitration?

## STANDARD OF REVIEW

"The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). "Arbitrability determinations are subject to de novo review." *Dean v. Heritage Healthcare of Ridgeway, LLC,* 408 S.C. 371, 379, 759 S.E.2d 727, 731 (2014) (emphasis omitted). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Gissel v. Hart,* 382 S.C. 235, 240, 676 S.E.2d 320, 323 (2009). "It is the policy of this state and federal law to favor arbitration[,] and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Landers v. Fed. Deposit Ins. Co.,* 402 S.C. 100, 109, 739 S.E.2d 209, 213 (2013) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 92 (4th Cir.1996)). "[T]he party resisting arbitration bears

---

5. This court granted the Insurers' motion to consolidate the appeal in all fourteen actions pursuant to Rule 214, SCACR.

the burden of proving that the claims at issue are unsuitable for arbitration." *Hall v. Green Tree Servicing, LLC*, 413 S.C. 267, 271, 776 S.E.2d 91, 94 (Ct.App.2015) (alteration in original) (quoting *Dean*, 408 S.C. at 379, 759 S.E.2d at 731).

## LAW/ANALYSIS

### I. Existence of a Valid Contract with an Arbitration Provision

First, the Insurers contend the circuit court erred in ruling no valid contract containing an arbitration provision existed. We agree.

#### A. Signature Requirement

■ The Insurers argue that, contrary to the circuit court's ruling, no requirement exists under the Federal Arbitration Act [6] (FAA) or in contract law that a contract must be signed by all parties to be enforceable. We agree.

■ "Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that the party has not agreed to submit." *Chassereau v. Glob.– Sun Pools, Inc.*, 363 S.C. 628, 632, 611 S.E.2d 305, 307 (Ct.App.2005). "Arbitration rests on the agreement of the parties, and the range of issues that can be arbitrated is restricted by the terms of the agreement." *Id.* (quoting *Zabinski*, 346 S.C. at 596–97, 553 S.E.2d at 118). Unless the parties contract otherwise, the FAA [7] applies to any arbitration agreement involving interstate commerce, regardless of whether the parties contemplated an interstate transaction.[8]

---

6. 9 U.S.C. §§ 1–16 (2012).

7. The FAA, in pertinent part, provides the following:
 A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 9 U.S.C. § 2 (2012).

8. The Insureds and Agents do not dispute that the 2010 Agency Agreement involves interstate commerce—presumably because they contest the validity of the agreement in its entirety. Nevertheless, we find the 2010 Agency Agreement did involve interstate commerce. The agree-

*Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001). Nonetheless, "[g]eneral contract principles of state law apply to arbitration clauses governed by the FAA." *Id.* at 539, 542 S.E.2d at 364.

 "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Clardy v. Bo-dolosky*, 383 S.C. 418, 425, 679 S.E.2d 527, 530 (Ct.App.2009) (quoting *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997)). "[I]t has long been a paradigm of South Carolina law that when a contract signed by one party only is accepted by the other party, it becomes binding upon both just as if it were signed by both." *Jaffe v. Gibbons*, 290 S.C. 468, 473, 351 S.E.2d 343, 346 (Ct.App.1986). "A contract does not always require the signature of both parties; it may be sufficient[ ] if signed by one and accepted and acted on by the other." *Id.; see also Peddler, Inc. v. Rikard*, 266 S.C. 28, 32, 221 S.E.2d 115, 117 (1975) (stating to give validity to a contract, it is not always necessary that it be signed by both parties, but rather it may be sufficient if one party signed the contract and the other party accepted, held, and acted upon it).

In the instant case, the circuit court held the Insurers "failed to meet their burden of proof in establishing a valid, binding contract by which the [Insureds and Agents] should be forced to arbitrate their claims" because the 2010 Agency Agreement was not signed by Southern Risk. We initially note that South Carolina law does not necessarily require both parties to sign a contract for it to be enforceable. *See Jaffe*, 290 S.C. at 473, 351 S.E.2d at 346; *Peddler*, 266 S.C. at 32, 221 S.E.2d at 117. Further, based upon our review of the record, Southern Risk, Dantice, and Willis accepted and acted upon the 2010 Agency Agreement. At all relevant times, Southern Risk, Dantice, and Willis sold insurance policies on behalf of the Insurers—a fact which is undisputed—and the 2010 Agen-

ment, along with its addenda, indicated the Insurers are located outside of South Carolina. Further, some or all of the insurance premiums to which the Insureds claimed they were entitled—as well as any resulting commissions of which the Agents claimed they were deprived—would have been sent from outside of South Carolina. Accordingly, we find the transaction involved interstate commerce and, thus, is covered by the FAA.

cy Agreement, along with the predecessor agreements, provided the sole source of authorization for them to do so.

Therefore, although Southern Risk did not sign the 2010 Agency Agreement, we hold the agreement—as well as the arbitration provision contained therein—was valid and binding upon the parties during the relevant period of Willis's alleged wrongdoing.[9] *See Jaffe*, 290 S.C. at 473, 351 S.E.2d at 346; *Peddler*, 266 S.C. at 32, 221 S.E.2d at 117; *see also Poteat v. Rich Prods. Corp.*, 91 Fed.Appx. 832, 834 (4th Cir.2004) (finding an agreement to arbitrate enforceable under South Carolina law, despite the fact that the employer never signed the agreement containing the arbitration provision).

### B. Statute of Frauds

The Insurers further argue the circuit court erred in ruling the 2010 Agency Agreement is invalid because it violates the statute of frauds. We agree.

Under the statute of frauds, "a contract that cannot be performed within one year [must] be in writing and signed by the parties." *Springob v. Univ. of S.C.*, 407 S.C. 490, 495, 757 S.E.2d 384, 387 (2014) (quoting *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005)); *see also* S.C.Code Ann. § 32–3–10 (2007) ("No action shall be brought ... [t]o charge any person upon any agreement that is not to be performed within the space of one year from the making thereof ... [u]nless the agreement ... [is] in writing and signed by the party to be charged therewith....").

---

9. In light of our holding, the question of whether prior agreements governed the parties' relationship is immaterial. Assuming, *arguendo,* we found the 2010 Agency Agreement was not binding upon the parties, we note the 2007 Agency Agreement—which contains an identical arbitration provision and was signed by a Southern Risk representative—would have remained in effect during the period of Willis's alleged wrongdoing. In the end, at all relevant times, the parties' relationship was governed by one of two agency agreements with identical arbitration provisions through which Southern Risk was permitted to sell insurance on behalf of the Insurers. We find the Insureds and Agents' arguments to the contrary unavailing and further reject the argument that the Insurers failed to preserve this argument. Starting with the motion to compel arbitration, the Insurers have repeatedly argued directly, or in the alternative, that their relationship with Southern Risk was governed by multiple agreements.

To satisfy the statute of frauds, the writing must be "signed by the party against whom enforcement is sought." *Springob,* 407 S.C. at 496, 757 S.E.2d at 387. The statute of frauds only applies to contracts that are impossible to perform within one year. *Roberts,* 327 S.C. at 484, 486 S.E.2d at 774. If performance of a contract is possible within a year, then the statute of frauds is not a bar to enforcement of the contract. *Id.* "The fact that performance within a year is highly improbable or not expected by the parties does not bring a contract within the scope of th[e statute of frauds]." *Id.*

Contrary to the circuit court, we find performance of the 2010 Agency Agreement was possible within a one-year period because the agreement was for an indefinite term and either party could terminate it at will—with or without cause—by giving as little as ninety days' notice. Given that it was possible for the 2010 Agency Agreement to be performed within a year, we hold the statute of frauds does not apply in this case. *See Roberts,* 327 S.C. at 484, 486 S.E.2d at 774 (asserting the statute of frauds is not a bar to enforcement of a contract if performance is possible within a year because the statute of frauds only applies to contracts that are impossible to perform within one year); *see also Ctr. State Farms v. Campbell Soup Co.,* 58 F.3d 1030, 1032 (4th Cir.1995) (stating "[a] contract terminable at will does not fall under South Carolina's statute of frauds"); *Weber v. Perry,* 201 S.C. 8, 11, 21 S.E.2d 193, 194 (1942) (providing that "contracts of employment for an indefinite term or on a contingency" do not fall within the statute of frauds).

Based on the foregoing, we find the circuit court erred in ruling the arbitration provision was unenforceable because the 2010 Agency Agreement did not satisfy the statute of frauds. In our view, the statute of frauds did not apply to the 2010 Agency Agreement and, thus, the absence of a signature from a Southern Risk representative could not—without more—act as a bar to its enforcement.

## II. Scope of the Arbitration Provision

Next, the Insurers contend the circuit court erred in determining the arbitration provision was too narrowly worded to encompass the causes of action raised by the Insureds

and Agents. Specifically, the Insurers argue the court erred in concluding the claims had no relation to, and were not in connection with, the performance or interpretation of the 2010 Agency Agreement. We agree.

"The policy of the United States and South Carolina is to favor arbitration of disputes." *Zabinski,* 346 S.C. at 596, 553 S.E.2d at 118. "The heavy presumption of arbitrability requires that[,] when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Landers,* 402 S.C. at 109, 739 S.E.2d at 213 (quoting *Am. Recovery,* 96 F.3d at 94). "Unless a court can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered." *Partain v. Upstate Auto. Grp.,* 386 S.C. 488, 491, 689 S.E.2d 602, 603–04 (2010) (per curiam). "A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute." *Pearson v. Hilton Head Hosp.,* 400 S.C. 281, 287, 733 S.E.2d 597, 600 (Ct.App.2012) (quoting *Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118–19).

"To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim." *Id.* (quoting *Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118).

"[E]ven if the court finds that a claim is outside the scope of the arbitration clause, the clause may still apply." *Partain,* 386 S.C. at 492, 689 S.E.2d at 604. Both the U.S. Court of Appeals for the Fourth Circuit and our supreme court "have held that the sweeping language of broad arbitration clauses applies to disputes in which a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained." *Landers,* 402 S.C. at 109, 739 S.E.2d at 214 (citing *J.J. Ryan,* 863 F.2d at 319; *Zabinski,* 346 S.C. at 598, 553 S.E.2d at 119). "Thus, a claim

falls within the scope of an arbitration clause if it is encompassed by the language of the clause or if a 'significant relationship' exists between the claim and the contract." *Partain,* 386 S.C. at 492, 689 S.E.2d at 604.

The arbitration provision at issue in this case, located in section 12.A of the 2010 Agency Agreement, provided as follows:

> If any dispute or disagreement *arises in connection with* the interpretation of this Agreement, its performance or nonperformance, its termination, the figures and calculations used[,] or any nonpayment of accounts, the parties will make efforts to meet and settle their dispute in good faith informally. If the parties cannot agree on a written settlement to the dispute within 30 days after it arises, or within a longer period agreed upon by the parties in writing, then the matter in controversy, upon request of either party, will be settled by arbitration. . . .

(emphasis added).

Applying the principles outlined above, we find the arbitration provision in the 2010 Agency Agreement was sufficiently broad to encompass a wide array of claims and should be construed accordingly. *Cf. J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir.1988) (stating "[t]he difference between the phrases 'in connection with' and 'may arise out of or in relation to' is largely semantic. Any difference is immaterial in view of the Supreme Court's admonition that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " (footnote omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983))). We further find the Insureds and Agents' proposed rule and reliance upon cases from other jurisdictions unpersuasive because the body of law in this state, as well as the Fourth Circuit, makes clear that arbitration provisions like the one at issue in this case should be broadly construed. *See J.J. Ryan,* 863 F.2d at 319; *Landers,* 402 S.C. at 109, 739 S.E.2d at 214; *Zabinski,* 346 S.C. at 598, 553 S.E.2d at 119.

In broadly construing the arbitration provision, we must determine whether the claims against the Insurers are encompassed by the language of the arbitration clause or if the

claims bear a significant relationship to the 2010 Agency Agreement. *See Partain,* 386 S.C. at 492, 689 S.E.2d at 604. The Insurers argue the claims in the instant case are premised on rights and duties that would not exist but for the 2010 Agency Agreement. The Insurers correctly assert that the claims are inextricably linked to their duties to investigate, train, supervise, and audit—all of which arose out of the agency relationship created by the 2010 Agency Agreement. Our inquiry, however, does not end here. As our supreme court has noted, "[a]pplying what amounts to a 'but-for' causation standard essentially includes every dispute imaginable between the parties, which greatly oversimplifies the parties' agreement to arbitrate claims between them. Such a result is illogical and unconscionable." *Aiken v. World Fin. Corp. of S.C.,* 373 S.C. 144, 150, 644 S.E.2d 705, 708 (2007). Nevertheless, "under the expansive reach of the FAA[,] a tort claim need not raise an issue that requires reference to or the construction of the contract ... to be encompassed by a broadly-worded arbitration clause." *Landers,* 402 S.C. at 111, 739 S.E.2d at 214.

Turning to the 2010 Agency Agreement, we find all of the duties the Insurers allegedly breached directly arose out of and touched upon the provisions of the agreement. The duties to train and supervise, for example, relate to paragraph 1.C of the agreement, under which Southern Risk was "only authorized to act as agent for [the Insurers] pursuant to written authority and guidelines furnished" by the Insurers. Additionally, paragraph 2.E of the agreement, which concerns Southern Risk's duty to notify the Insurers when any employees have their licenses suspended, implicates the duties to investigate and supervise. Paragraph 2.C—a provision requiring that all Southern Risk employees have the proper licensing and authority to sell insurance—also touches upon the duty to investigate and conduct background checks. Even more specifically, paragraph 2.F directly spells out the duty to assist in conducting background checks of all Southern Risk personnel. Finally, paragraphs 6.A—D outline the billing and accounting practices, as well as collection procedures, the Insurers expected Southern Risk to follow, all of which implicated a duty to audit. Although the Insureds and Agents seek to focus on the fraud, forgery, and misappropriation claims,

these allegations related specifically to Willis's conduct. As to the Insurers, on the other hand, the main crux of the Insureds and Agents' claims was that they failed in their duties to investigate, train, supervise, and audit Willis. Willis, in her role as a subproducer, had no authority to sell insurance on behalf of the Insurers in the absence of the 2010 Agency Agreement the Insurers entered into with her employer, Southern Risk.

Accordingly, in light of the breadth of the 2010 Agency Agreement, as well as the particular manner in which the Insureds and Agents pled their underlying factual allegations, we find their tort claims against the Insurers were encompassed by the language of the arbitration clause in the 2010 Agency Agreement.[10] *See Partain,* 386 S.C. at 492, 689 S.E.2d at 604; *Landers,* 402 S.C. at 112, 739 S.E.2d at 215. Therefore, we hold the circuit court erred in finding the arbitration provision was too narrowly worded to reach the type of claims asserted in this case.

### III. Compelling Arbitration on Nonsignatories

The Insurers contend the circuit court further erred in refusing to compel arbitration of the claims against them based upon the fact that the Insureds and Agents were nonsignatories to the 2010 Agency Agreement. We agree.

"While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, '[i]t does not follow . . . that[,] under the [FAA,] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.' " *Pearson,* 400 S.C. at 288, 733 S.E.2d at 600 (first and third alterations in original) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 416 (4th Cir.2000)). "Rather, a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Id.* (quoting *Int'l Paper,* 206 F.3d at 416).

---

**10.** Given our finding that the claims were encompassed by the language of the arbitration clause, we need not reach the significant relationship question.

■ "The rule in the Fourth Circuit is that 'a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a "significant relationship" exists between the asserted claims and the contract in which the arbitration clause is contained.'" *Id.* (quoting *Long v. Silver*, 248 F.3d 309, 316 (4th Cir.2001)). "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Id.* (quoting *Int'l Paper*, 206 F.3d at 416–17).

■ "Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *Id.* at 290, 733 S.E.2d at 601 (quoting *Int'l Paper*, 206 F.3d at 417–18). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper*, 206 F.3d at 418. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA]." *Id.* (first alteration in original) (quoting *Avila Grp., Inc. v. Norma J. of Calif.*, 426 F.Supp. 537, 542 (S.D.N.Y.1977)). "A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'" *Id.* (quoting *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999)).

In the instant case, although the Insureds and Agents admittedly did not see the 2010 Agency Agreement prior to bringing this action, this does not control our inquiry because the allegations in their complaints necessarily depend upon the terms, authority, and duties created and imposed by that agreement.[11] In other words, while the Insureds and Agents

---

11. The Insureds and Agents argue they rely upon section 38–51–10(h) of the South Carolina Code as the basis for establishing the Insurers' agency relationship with Willis, Dantice, and Southern Risk. The provision cited, however, does not appear in the current version of the Code.

do not expressly rely upon other provisions in the 2010 Agency Agreement, they would not be able to reach the Insurers with their claims in the absence of the agreement establishing the agency relationship between the Insurers and Southern Risk, Dantice, and Willis. Because the duties the Insureds and Agents contend the Insurers allegedly breached arise from the 2010 Agency Agreement, the Insureds and Agents receive a "direct benefit" from that agreement. Accordingly, we find the Insureds and Agents are equitably estopped from arguing their status as nonsignatories precludes enforcement of the arbitration provision when their complaints seek to benefit from the enforcement of other provisions in the 2010 Agency Agreement. *See Pearson*, 400 S.C. at 297, 733 S.E.2d at 605; *see also Int'l Paper*, 206 F.3d at 413–14, 418 (concluding the plaintiff—buyer could not "sue to enforce the guarantees and warranties of the distributor—manufacturer contract without complying with its arbitration provision" and, therefore, compelling the nonsignatory plaintiff's claims to arbitration under a theory of equitable estoppel).

Therefore, we find the circuit court erred in concluding the doctrine of equitable estoppel was inapplicable to the instant case.

---

*See* S.C.Code Ann. § 38–51–10 (2015). Indeed, a review of the legislative history reveals the subsection relied upon was removed from the statute in 1987. *See* Act No. 155, 1987 S.C. Acts 741–42. In any event, because the current version of section 38–51–10 defines "administrator" and lists a number of exceptions for that term, we find it inapplicable to the instant case. Additionally, while the Insureds and Agents also rely upon section 38–43–10 of the South Carolina Code (2015), this statute merely lists the requirements for being appointed a producer of insurance on behalf of an insurer. Given that section 38–43–55 of the South Carolina Code (2015) lists the procedures an insurer must follow when it "cancel[s] a producer contract"—thereby divesting the producer of the appointment mentioned in section 38–43–10—we find the General Assembly contemplated that agency relationships such as the one at issue here would be governed by a contract. Thus, even looking to the statutes upon which the Insureds and Agents purportedly rely, we find they still cannot reach the Insurers without the 2010 Agency Agreement. The agreement defined the parameters of the authority for Willis, Dantice, and Southern Risk to sell insurance on behalf of the Insurers and exclusively governed the agency relationship between them.

## IV. Outrageous Conduct

Additionally, the Insurers contend the circuit court erred in finding the claims were not encompassed by the arbitration provision because the Insurers' alleged actions constituted illegal and outrageous acts unforeseeable to a reasonable consumer in the context of normal business dealings. We agree.

"Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, [an appellate c]ourt will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Aiken,* 373 S.C. at 151, 644 S.E.2d at 709. Nevertheless, our supreme court "did not seek to exclude all intentional torts from the scope of arbitration [in *Aiken* ], but only 'those outrageous torts, which although factually related to the performance of the contract, are legally distinct from the contractual relationship between the parties.'" *Partain,* 386 S.C. at 493–94, 689 S.E.2d at 605 (quoting *Aiken,* 373 S.C. at 152, 644 S.E.2d at 709). "Where parties have contractually agreed to arbitrate a claim, a party may not escape its commitment simply by presenting his claim as a tort. Only where the claim presented was clearly not within the contemplation of the parties will a court decline to enforce an otherwise proper arbitration agreement." *Id.* at 494–95, 689 S.E.2d at 605.

In this case, the circuit court found the Insureds and Agents "grounded their [c]omplaints on allegations of fraudulent conduct and misrepresentation." As noted in Part II, *supra,* we disagree with this characterization of the Insureds and Agents' claims against the Insurers. In our view, the Insureds and Agents' claims—even under a respondeat superior theory—center on the Insurers' alleged failure to sufficiently investigate, train, supervise, and audit Willis. Given that such tort claims are rather commonplace, and do not involve intentional or otherwise outrageous conduct, we cannot say these claims were "clearly not within the contemplation of the parties" to the 2010 Agency Agreement. *Cf. Partain,* 386 S.C. at 494–95, 689 S.E.2d at 605. To the contrary, we believe the parties to the 2010 Agency Agreement did contemplate that

ordinary claims directly related to their agency relationship would be submitted to arbitration pursuant to the agreement governing that relationship. Thus, because their claims against the Insurers did not contain allegations of the type of outrageous conduct contemplated under the *Aiken* line of cases, we find the arbitration clause in the 2010 Agency Agreement should apply to the Insureds and Agents.

Based on the foregoing, we hold the circuit court erred in finding the claims were not encompassed by the arbitration provision because the Insurers' alleged actions constituted illegal and outrageous acts unforeseeable to a reasonable consumer in the context of normal business dealings.

## V. Waiver of Right to Compel Arbitration

Finally, the Insurers contend the circuit court erred in holding they waived their right to compel arbitration in this case. We agree.

Although South Carolina favors arbitration, the right to enforce an arbitration clause may be waived. *Rhodes v. Benson Chrysler–Plymouth, Inc.*, 374 S.C. 122, 126, 647 S.E.2d 249, 251 (Ct.App.2007). "[T]o establish waiver, a party must show prejudice through an undue burden caused by delay in demanding arbitration." *Gen. Equip. & Supply Co., Inc. v. Keller Rigging & Constr., SC, Inc.*, 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct.App.2001). No set rule exists "as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct.App. 1999) (quoting *Hyload, Inc. v. Pre–Engineered Prods., Inc.*, 308 S.C. 277, 280, 417 S.E.2d 622, 624 (Ct.App.1992)).

Our courts consider the following three factors when determining whether a party has waived its right to compel arbitration:

(1) whether a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-

moving party was prejudiced by the delay in seeking arbitration.

*Rhodes,* 374 S.C. at 126, 647 S.E.2d at 251.

 "Thus, a party may waive its right to compel arbitration if a substantial length of time transpires between the commencement of the action and the commencement of the motion to compel arbitration." *Id.* What constitutes a substantial length of time can vary from one case to the next, depending upon the extent of discovery conducted and whether the party opposing arbitration is prejudiced. *Id.*

 "To establish prejudice, the non-moving party must show something more than 'mere inconvenience.'" *Id.* at 127, 647 S.E.2d at 251 (quoting *Evans v. Accent Manufactured Homes, Inc.,* 352 S.C. 544, 550, 575 S.E.2d 74, 76 (Ct.App.2003)). "In addition to the above factors, this court has also considered the extent to which the parties have availed themselves of the circuit court's assistance." *Carlson v. S.C. State Plastering, LLC,* 404 S.C. 250, 257, 743 S.E.2d 868, 872 (Ct.App.2013).

> To ascertain whether the non-moving party was prejudiced, our courts often examine whether the party requesting arbitration took "advantage of the judicial system by engaging in discovery." This inquiry, however, is just part of a broader, common sense approach our courts take to determine whether a motion to compel arbitration should be granted or denied: (1) if the parties conduct little or no discovery, then the party seeking arbitration has not taken "advantage of the judicial system," prejudice will not likely exist, and the law would favor arbitration; (2) if the parties conduct significant discovery, then the party seeking arbitration has "taken advantage of the judicial system," prejudice will likely exist, and the law would disfavor arbitration. Of course, cases do not always fit neatly into clearly defined categories, which is why our law resists a formulaic approach and motions to compel arbitration are resolved only after a fact-intensive inquiry. Accordingly, each case turns on its particular facts.

*Rhodes,* 374 S.C. at 127, 647 S.E.2d at 251–52 (internal citation omitted).

We hold the Insurers did not waive their right to compel arbitration under the 2010 Agency Agreement in this case. Turning to the first factor, we find a substantial length of time did not transpire between the Insureds and Agents commencing these lawsuits and the Insurers filing their motions to compel arbitration. Although many of the actions had been pending for anywhere from six to eleven months prior to the Insurers seeking to compel arbitration, this time frame does not appear to be substantial under our line of waiver cases or the facts of the instant case. *Compare Deloitte & Touche, LLP v. Unisys Corp.*, 358 S.C. 179, 184, 594 S.E.2d 523, 526 (Ct.App.2004) (finding a five-and-a-half-year period in which the parties "conducted a significant amount of discovery, resulting in the production of thousands of documents" was sufficient for waiver), *Evans*, 352 S.C. at 548, 575 S.E.2d at 75–76 (finding a nineteen-month period in which the parties exchanged written interrogatories, requests for production, and the party requesting arbitration took two depositions demonstrated waiver), *and Liberty Builders*, 336 S.C. at 666, 521 S.E.2d at 753–54 (finding a two-and-a-half-year period in which the parties sought assistance from the court on approximately forty occasions constituted waiver), *with Toler's Cove Homeowners Ass'n, Inc. v. Trident Constr. Co., Inc.*, 355 S.C. 605, 612, 586 S.E.2d 581, 585 (2003) (finding a thirteen-month period in which discovery was "very limited in nature and the parties had not availed themselves of the court's assistance," and the respondent "had not held any depositions," did not demonstrate waiver), *Rich v. Walsh*, 357 S.C. 64, 67, 590 S.E.2d 506, 507 (Ct.App.2003) (finding a thirteen-month period in which "[l]imited discovery was conducted" and the party requesting arbitration took one deposition lasting fifteen minutes did not amount to waiver), *and Gen. Equip.*, 344 S.C. at 557, 544 S.E.2d at 645 (finding a period of less than eight months in which the "litigation consisted of routine administrative matters and limited discovery which did not involve the taking of depositions or extensive interrogatories" did not establish waiver).

Regarding the second factor, we find the limited amount of discovery the parties engaged in further supports the notion that a substantial amount of time had not transpired in this case before the Insurers moved to compel arbitration. Al-

though the *Rhodes* court upheld a finding of waiver when the appellant waited ten months to file its motion to compel arbitration, the parties in that case had conducted virtually all discovery—including written interrogatories, requests for production, and five depositions—and the case was already set on the trial docket at the time the motion was filed. The instant case, on the other hand, had not progressed much beyond the filing of pleadings and motions to dismiss. The Insureds and Agents had served complaints and amended complaints, and the Insurers had answered and filed motions to dismiss. Neither party, however, had taken any depositions in this case. While the parties had certainly "commenced discovery," as the circuit court noted, they had not "engaged in extensive discovery" as is required under the test. Further, when the Insurers filed the motions to compel arbitration, they alerted the Insureds and Agents in writing that they need not respond to the Insurers' written discovery while the motion was pending.

As to the third and final factor, we disagree with the circuit court's finding that the Insureds and Agents were prejudiced as a result of the Insurers waiting, in some instances, eleven months to file motions to compel arbitration. In our opinion, the Insureds and Agents are unable to show anything beyond "mere inconvenience" to reach the requisite level of prejudice to establish waiver. Moreover, unlike the circuit court, we believe the complexity of this matter goes against a finding of prejudice in the instant case. Instead, we find the complicated nature of this action rendered the eleven-month period even more reasonable under the circumstances.

We do, however, acknowledge it is a closer call on the third factor because the Insurers took some actions that could be deemed taking advantage of the judicial system or availing themselves of the circuit court's assistance. The Insurers, for example, filed two motions for judgment on the claims of civil conspiracy, unfair trade practices, and common law unfair trade practices. Nevertheless, the Insurers withdrew both motions prior to the circuit court holding a hearing and ruling upon them. Additionally, while the Insurers filed an action in federal court seeking a declaratory judgment against Williams, this action was dismissed pursuant to a stipulation of dismissal. Thus, although the Insurers did take some minimal

action availing themselves of the court system, we find such action—when viewed in light of the minimal amount of discovery conducted in this case and the amount of time that transpired—does not rise to the level of prejudice necessary to waive the right to compel arbitration against the Insureds or Agents, or Williams in particular, under our line of waiver cases.

Accordingly, we hold the circuit court erred in finding the Insurers waived their right to compel arbitration in this case.

## VI. Additional Sustaining Grounds

While this court has discretion regarding whether to address additional sustaining grounds,[12] we take the opportunity to do so here to clarify the law discussed in the Insureds and Agents' arguments.

### A. Production of the 2010 Agency Agreement

 As an additional sustaining ground, the Insureds and Agents first argue the circuit court could have denied the Insurers' motions on the ground that the agreements containing the arbitration clauses were intentionally withheld during discovery to prevent the Insureds and Agents from challenging them. We disagree.

In support of their argument, the Insureds and Agents broadly assert the following:

Substantive due process and the [South Carolina] Rules of Civil Procedure require that critical documents to a matter pending in court, which could potentially end the trial and compel arbitration, must be timely provided to the other parties in the case ... [so] the documents can be appropriately challenged through discovery and appropriate cross-examination of the person or persons having knowledge concerning the documents.

They further note that the attorney's oath in Rule 402, SCACR, requires "fairness, integrity, and civility ... in all written and oral communications," and Rule 37, SCRCP, pro-

---

12. *See I'On, LLC v. Town of Mt. Pleasant*, 338 S.C. 406, 420 n. 9, 526 S.E.2d 716, 723 n. 9 (2000) (noting "[t]he appellate court may or may not wish to address such grounds when it reverses the lower court's decision").

hibits a party from intentionally refusing to respond to specific questions in interrogatories and requests for production. The Insurers, on the other hand, argue "[t]heir objections to the [Insureds and Agents]' discovery requests were legitimate, legally supported, reasonable, and not unusual."

Whether to impose sanctions is a decision left to the sound discretion of the circuit court. *Davis v. Parkview Apartments*, 409 S.C. 266, 281, 762 S.E.2d 535, 543 (2014). "Therefore, an appellate court will not interfere with 'a [circuit] court's exercise of its discretionary powers with respect to sanctions imposed in discovery matters' unless the court abuses its discretion." *Id.* (quoting *Karppi v. Greenville Terrazzo Co., Inc.*, 327 S.C. 538, 542, 489 S.E.2d 679, 681 (Ct.App. 1997)).

We find the primary case upon which the Insureds and Agents rely, *Hilton Head Beach & Tennis Resort v. Sea Cabin Corp.*, 305 S.C. 517, 409 S.E.2d 434 (Ct.App.1991), is distinguishable from the case at hand. Unlike the defendant in *Sea Cabin*, who responded to discovery but withheld one item, the Insurers raised legitimate objections to discovery in the instant case and did not produce any items. 305 S.C. at 519–20, 409 S.E.2d at 436. Indeed, had the Insurers engaged in further discovery, such action could have caused them to waive their right to compel arbitration of the claims in this case. Further, in *Sea Cabin*, the defendant failed to produce an important piece of evidence until the final day of trial, leaving the plaintiffs with no time to properly investigate it. 305 S.C. at 520, 409 S.E.2d at 436. In this case, however, the Insurers produced the 2010 Agency Agreement—along with the prior agreements—well in advance of the hearing on the motion to compel arbitration, giving the Insureds and Agents sufficient time to review, challenge, and respond to this evidence.

Our review of the record reveals the Insurers, who admittedly found themselves in a bit of a Catch–22 situation,[13] did not intentionally withhold the 2010 Agency Agreement to prevent the Insureds and Agents from challenging it. Nor did

---

**13.** *See generally* JOSEPH HELLER, CATCH–22 1–453 (1961) (setting up a plot in which the main character finds himself in a paradoxical, no-win situation).

the Insurers, or their counsel, violate any of the procedural or ethical rules cited above in turning over the documents when they did. Instead, the Insurers properly waited to serve copies of the 2010 Agency Agreement and its predecessors with their motions to compel arbitration. Accordingly, we find it would be inappropriate to invade the province of the circuit court by deciding this appeal on the unsupported ground that the court abused its discretion by not sanctioning the Insurers. *See Davis,* 409 S.C. at 281, 762 S.E.2d at 543 (noting the decision of whether to impose sanctions is left to the sound discretion of the circuit court).

### B. Arbitration Exemption for Insureds

As a second additional sustaining ground, the Insureds and Agents argue the circuit court should have denied the Insurers' motion to compel arbitration on the basis that section 15–48–10 of the South Carolina Code (2005) "specifically exempts any insured or beneficiary under any insurance policy from arbitration." We disagree. Subsection 15–48–10(b)(4) states the South Carolina Uniform Arbitration Act [14] "shall not apply to ... [a]ny claim arising out of personal injury, based on contract or tort, or to any insured or beneficiary under any insurance policy or annuity contract." As this court has held, subsection 15–48–10(b)(4) "was enacted for the purpose of regulating the business of insurance" and, as such, reverse preempted the FAA through application of the McCarran–Ferguson Act.[15] *Cox v. Woodmen of World Ins. Co.,* 347 S.C. 460, 468, 556 S.E.2d 397, 401, 402 (Ct.App.2001). Nevertheless, "[t]he FAA and section 15–48–10(b)(4) conflict with one another only when a litigant seeks to enforce an arbitration agreement contained in an insurance policy governed by South Carolina law." *Walden v. Harrelson Nissan, Inc.,* 399 S.C. 205, 210, 731 S.E.2d 324, 326 (Ct.App.2012).

Similar to the contract in *Walden,* the 2010 Agency Agreement at issue in the instant case is not an insurance policy. 399 S.C. at 210, 731 S.E.2d at 326. Like the *Walden* court, we find the causes of action against the Insurers are, therefore,

---

14. S.C.Code Ann. §§ 15–48–10 through–240 (2005).

15. 15 U.S.C. §§ 1011–15 (2012).

not the claims of "any insured or beneficiary under any insurance policy" that would exempt this action from arbitration pursuant to subsection 15–48–10(b)(4). 399 S.C. at 209, 731 S.E.2d at 326. Accordingly, we reject the Insureds and Agents' expansive interpretation of the statute and decline to decide the case on this alternate sustaining ground. *See id.* at 210, 731 S.E.2d at 326 (holding subsection 15–48–10(b)(4) was not intended to apply to "agreements that only have a tangential relationship to an insurance policy, but was instead intended to apply directly to an insurance contract"); *Cox,* 347 S.C. at 468, 556 S.E.2d at 401 (noting subsection 15–48–10(b)(4) "expressly invalidates a[n arbitration] provision contained in an insurance policy"); *see also Am. Health & Life Ins. Co. v. Heyward,* 272 F.Supp.2d 578, 582 (D.S.C.2003) (holding subsection 15–48–10(b)(4) "prohibits the enforcement of arbitration clauses in insurance policies governed by South Carolina law").

## CONCLUSION

Based on the foregoing analysis, we **REVERSE** the order of the circuit court and **REMAND** with instructions to grant the Insurers' motions to dismiss the Insureds and Agents' claims and compel them to arbitration.

HUFF, A.C.J., and THOMAS, J., concur.